UNICE SOUTHALL v. THE STATE.

No. 3672.   Decided October 13, 1915.

Rehearing denied November 10, 1915.

### 1.—Aggravated Assault—Principal.

Where there was no question that defendant's co-defendant committed an aggravated assault on the party alleged to have been injured, and the evidence upon the whole showed that defendant's conduct on that occasion was such as to make him a principal in the commission of the offense, the conviction is sustained.

### 2.—Same—Evidence—Principal—Declaration of Third Party.

Where the record showed on appeal that the defendant and others were acting together when the declaration of one of them was made to the effect that they would get the party alleged to have been injured on his road home, and the evidence further showed that the defendant and his co-defendants were together when the assault was afterwards made by defendant's co-defendant, such declaration was admissible in evidence, whether it was made by defendant or one of his co-defendants.

### 3.—Same—Evidence—Declarations of Third Party.

Where, upon trial of aggravated assault, the record showed that defendant and his co-defendants acted together in premeditating an assault upon the party alleged to have been injured, the declarations of the party who was with the alleged injured party asking him to go home, was admissible in evidence, it being shown that defendant and those with him were in such a position that they could and probably did hear what was said, and that the party injured was waylaid and assaulted on his way home by some of the parties in defendant's company.   Following Lagrone v. State, 61 Texas Crim. Rep., 170, 135 S. W. Rep., 121, and other cases.

### 4.—Same—Evidence—Declarations of Third Party.

Where, upon trial of aggravated assault, it was shown that defendant and his co-defendants were all together when one of his co-defendants made the assault, there was no error in admitting the declaration of defendant's co-defendant in running after the party injured, and striking him with a fence post, in order to show that defendant was guilty of such conduct as would make him a principal in the commission of the offense.

### 5.—Same—Evidence—Hearsay—Harmless Error.

Where, upon trial of aggravated assault, there was no issue in the case that the instrument used by defendant's co-defendant in committing the assault, was a fence rail, and that it was found the next morning with blood on it, and other witnesses had testified to these facts, it was harmless error to admit in evidence the hearsay declarations of a third party as to this fact.

**6.—Same—Defensive Matter—Charge of Court.**

 Where, upon trial of aggravated assault, defendant's defense that he was an innocent bystander when the assault occurred, was fairly submitted in defendant's requested charges, and the evidence sustained the conviction of aggravated assault, there was no reversible error.

Appeal from the County Court of Johnson. Tried below before the Hon. B. Jay Jackson.

Appeal from a conviction of aggravated assault; penalty, a fine of $25. The opinion states the case.

*Johnson & Harrell,* for appellant.—On question of insufficiency of testimony: Decker v. State, 57 Texas Crim. Rep., 359, 124 S. W. Rep., 912; Serrato v. State, 74 Texas Crim. Rep., 413; White v. State, 29 Texas Crim. App., 530; Lee v. State, 34 Texas Crim. Rep., 519.

On question of declaration of third party: Murphy v. State, 40 S. W. Rep., 978; Johnson v. State, 22 Texas Crim. App., 206; Arnwine v. State, 54 Texas Crim. Rep., 213.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant prosecutes this appeal from a conviction for aggravated assault. Under this record there could be no question that Otis Wood did make an aggravated assault upon M. M. Wilshire—the only contested issue in the case being whether or not appellant's conduct on that occasion was such as to make him a principal in the commission of the offense.

The undisputed testimony in the case would show a number of young gentlemen had attended a moving picture show at Burleson. After the show Wilshire asked Wood Haynes if he knew when Miller was coming back. Otis Wood responded, "I don't know anything about him." Wilshire said, "I was not speaking to you," when Wood cursed him, and invited him to go behind the stores when he would whip him. It is made to appear, by defendant's testimony, that at this time appellant advised Wood to desist, and Wood said he would if Wilshire did not want to fight. Wilshire retired into a restaurant, and Wood, appellant, Wyatt Hunt and Travis Brown got together on the gallery of the restaurant. Several witnesses testify while these four boys were together someone said, referring to Wilshire, "We will get him, or I will get him on his road home." 'Appellant accepted the bills as filed by the court, and in the qualification the court says the evidence shows "that at the time such remarks were made appellant, Otis Wood, Wyatt Hunt and Travis Brown were together in front of the restaurant and that the remark came from the crowd so bunched up." As qualified by the court these bills present no error. All four were together when the assault was made by Wood, and the testimony showing that if appellant did not make the remark himself, he was standing in such proximity as to lead a jury to believe that he could have and did hear it, and it would be material testimony on the issue of whether or not appellant was a principal in the commission of the offense.

There are also several bills in the record objecting to the admissibility of a statement made by Gulley to Wilshire while he was in the restaurant and appellant and the other young men were on the gallery. It is made to appear by the testimony that Wilshire instead of going to his own home, to avoid a difficulty went with Gulley in Gulley's buggy. After Wilshire had stayed in the restaurant for some time, Gulley approached him and said, "Come on and let's go home," to which Wilshire responded, "All right." Appellant objected to this on the ground that he was not present when the language was used. The record discloses that appellant and the other young men were on the gallery of the restaurant at the time; that Wilshire could and did hear what was said by them when the remark was made, "We or I will get him on his way home," and consequently appellant and those with him were in such a position that they could and probably did hear what was said. The record further discloses that when Wilshire and Gulley got in the buggy and started and had gone about two miles, appellant, Wood, Hunt and Brown were in buggies in the forks of the road— their buggies being so placed that it was impossible for Gulley to drive on; that Woods asked him if Wilshire was in the buggy, and upon being answered in the affirmative said, "Tell Wilshire to get out, I am going to whip him." Appellant being placed by the evidence in a position where he could and probably did hear the arrangements made between Gulley and Wilshire for Wilshire to accompany Gulley home and appellant also being in company with Woods, on Gulley's road home, at the time the buggies were so placed that Gulley could not pass, and Woods said to Gulley, "Tell Wilshire to get out, I am going to whip him," the testimony was admissible on the issue of whether or not there was a premeditated assault, and if there was a conspiracy between appellant, Woods and the other two young gentlemen to so place themselves in the road as to bring it about, and whether or not appellant, with a knowledge of these facts, so conducted himself at the time of the assault as to render himself a principal in the offense committed by Woods. The State's evidence would show when Wilshire struck Woods with a plank and knocked him down appellant jerked the plank from Wilshire and handed it to Woods. Appellant admits getting the plank from Wilshire, but says he did not hand it to Wood; that Woods jerked it out of his hand. The testimony objected to was properly admitted. Holden v. State, 18 Texas Crim. App., 91; LaGrone v. State, 61 Texas Crim. Rep., 170, 135 S. W. Rep., 121.

When the fight took place in the road and appellant took the plank away from Wilshire and he either handed it to Woods or Woods wrenched it out of his hands and struck Wilshire, Wilshire ran, Woods pursuing him. Appellant objected to Wilshire testifying what Woods did to him after he ran, on the ground that appellant was not present. If appellant was a principal in the commission of the offense, the evidence would be admissible, and as the evidence shows that appellant, Brown and Hunt followed on after them, and the State's testimony would show that when they caught him with Woods and Wilshire they

remarked, "that he (Woods) ought to beat your (Wilshire's) damned head off," would be a strong circumstance tending to show that appellant was present and lending encouragement to Woods in the commission of the assault, and guilty of such conduct as would make him a principal in the commission of the offense.

Wilshire testified that after he fled he got tangled in some brush, when Woods overtook him and beat him with a fence rail. That he knew it was a fence rail because one was found on the ground the next morning with blood on it. On cross-examination it appeared that Wilshire did not go back to the scene of the difficulty, and did not see the rail, but Gulley did go back and found the rail, and saw the blood. Wilshire should not have been permitted to testify as to what he had learned from Gulley. It was hearsay; but inasmuch as Gulley testified to the same state of facts, and there is no testimony denying this state of facts, this does not present reversible error. If appellant had raised an issue by any testimony that it was not a fence rail, or that one was not found on the ground with blood on it, we might take a different view of the matter.

Appellant's testimony would raise the issue that he was not a principal, and was an innocent bystander, who merely happened to be present when all these matters occurred; that he in no way aided or encouraged Woods, and did no acts and was guilty of no conduct that would make him a principal. This issue was fairly and fully presented in the two special charges given at appellant's request, and the jury found against such contention, and we would not be authorized to disturb their finding, as the evidence offered by the State will support the verdict of the jury on this and all other issues in the case.

Appellant contends there is no evidence tending to raise the issue of a premeditated assault. We think the State's evidence would amply show a preconceived premeditated plan to waylay Gulley and Wilshire; that they were waylaid and a fight forced by Woods at a point in the road selected by Woods, appellant, Hunt and Brown, when all four were present.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied November 10, 1915.—Reporter.]