UNITED STATES of America

v.

Harry J. ALKER, Jr., Appellant.

No. 12404.

United States Court of Appeals
Third Circuit.

Submitted March 20, 1958.

Decided May 15, 1958.

Jacob Kossman, Philadelphia, Pa., for appellant.

Harold K. Wood, U. S. Atty., Henry P. Sullivan, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The appellant was tried on two indictments. The first charged him in one count with violating Section 894(b) (2) (C) of the Internal Revenue Code of 1939, 26 U.S.C. § 894(b) (2) (C), by willfully attempting to evade part of the estate tax due on the estate of Winfred S. Hurst, deceased. The second and third counts of this indictment charged violations of Section 7207 of the Internal Revenue Code of 1954, 26 U.S.C. § 7207, in the submitting of false and fraudulent documents to the Secretary of the Treasury. The second indictment charged that the appellant and two others conspired to commit the substantive offenses of the first indictment. After the prosecution had presented its case, the district court granted a motion to dismiss the conspiracy charges. The jury subsequently found the appellant guilty of the substantive offenses on all three counts of the first indictment. He was sentenced to six months imprisonment on each count, the terms to run concurrently, and was fined $8,000 on the first count and $1,000 on each of the others. Various errors are alleged on this appeal.

The government sought to prove that the day after Winfred Hurst died, the defendant, who was his executor, removed $35,000 belonging to Hurst from Hurst's safe, and thereafter did not report this money in the estate tax return as part of the assets of the estate. Government witnesses testified that the day after Hurst's death, appellant met in the decedent's office with four beneficiaries under the will; that the defendant then opened Hurst's safe, and took out seven packages of money. The testimony as to what occurred next is exemplified by the following excerpt from the examination of Jane Roth, a prosecution witness who was one of those present at the opening of the safe:

"Q. Did anything come out of the safe? A. There was money * * *.

"Q. If you know, how much money? A. When Mr. Alker was taking it out of the safe, he said something about—there were bundles of money, and he said something about it being $500 in each bundle, and Mr. Carpenter corrected him, and said 'No. $5,000.00'.

"Defense Counsel: I object and move that that be stricken, sir.

"The Court: Overruled":
It appeared that appellant made no reply when he was thus corrected.

■ The appellant now asks us to find the testimony of what Carpenter said about the amount of money in each bundle inadmissible and prejudicial hearsay. However, we think this is a very clear and striking example of evidence receivable as an admission by adoption.

Rule 26 of the Federal Rules of Criminal Procedure directs that the admissibility of evidence shall be governed "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." 18 U.S.C., Rules of Criminal Procedure, Rule 26. The basis upon which adoptive admissions stand as competent evidence was stated by Mr. Justice Curtis one hundred years ago:

"* * * these declarations * * * made in the presence of all the defendants, * * * were of such a character, and made under such circumstances, as imperatively to have required them to deny their correctness if they were untrue; and therefore they were clearly admissible." Turner v. Yates, 1853, 16 How. 14, 27, 14 L.Ed. 824. Accord, Sparf v. United States, 1895, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343. For an elaboration of the doc-

trine, see 4 Wigmore, Evidence §§ 1071, 1072.

Here an occasion had been arranged for an executor to take possession of the contents of his decedent's safe in the presence of legatees. One of the most obvious and important purposes of such an assemblage is to obviate any future dispute or suspicion about the nature and amount of the property which the executor is taking into his hands. And in any event, it is important to the executor as a responsible fiduciary that there be independent witnesses to corroborate him as to the amount of property for which he is accountable. In these circumstances there is normally a very clear and strong inference of the executor's assent to be drawn from his failure to challenge a substantial verbal correction voiced on such an occasion as this in response to the executor's own statement of the amount being taken into his possession. There is no suggestion here that the appellant did not understand what was said to him or that he was prevented from replying, or that the circumstances were in any way extraordinary. It was entirely proper that the jury should be permitted to draw the normal inference of assent from the appellant's silence.

Even if this evidence had been technically inadmissible, the error would not have been substantial in the circumstances of this case. Quite apart from this questioned testimony there were in evidence some six separate direct statements by the appellant, three in written communications concerning the estate tax liability, admitting that a sum between $30,000 and $35,000 had been found in the office of the deceased but arguing that most of this belonged to other persons. Thus, the argument was not whether about $3,000 or about $30,000 had been found in the safe but whether the larger sum, admittedly found, constituted assets of the estate. The adoptive admission to which appellant objects was at most only a slight makeweight added to an already overwhelming group of unchallenged explicit admissions, both written and oral, of the same relevant fact.

Appellant's next argument is that the dismissal of the conspiracy indictment at the close of the government's case required a new trial on the substantive charges because testimony introduced with reference to the conspiracy prejudiced the rest of the case. This contention was not advanced at trial and no request was made even that the jury be cautioned against improper use of testimony which appellant, now for the first time, views with concern. This is not to criticize able trial counsel. For on the record counsel seems not to have found and we have not found any substantial basis for apprehension. Indeed, the line of testimony of which appellant complains principally in this connection is the very statement—which happens to have been made by an alleged co-conspirator—about the amount found in the safe which we already have ruled admissible as an adoptive admission. This was as competent in first instance on the substantive counts as under the conspiracy charge.

The second item said to have been prejudicial is a hearsay statement made by an alleged co-conspirator on the same subject, but not in the presence of the appellant. But here again, such an overwhelming body of clearly competent evidence establishes without serious contradiction that $30,000 or more had been removed from the safe, that a single hearsay reaffirmation of the same fact cannot be viewed as reversible error.

Appellant next urges most strongly that the convictions on the second and third counts of the first indictment, charging submission of forged documents to the Internal Revenue Service, cannot stand because the statute upon which the indictment is founded does not cover the circumstances in evidence. As to these convictions the government says in its brief that it "is agreeable that they be dismissed by the court and the sentence thereon vacated." Accordingly, we shall direct that this be done thus relieving the appellant of the additional

fines, aggregating $2,000, imposed under these counts.

All other points made in the brief and the reply brief of the appellant have been fully considered. We are not persuaded by any of them.

The judgment and commitment will be affirmed as to count one of the indictment and reversed as to counts two and three.