**UNITED STATES of America**

v.

**Harry J. ALKER, Jr.**

**Crim. No. 18730.**

United States District Court
E. D. Pennsylvania.

Dec. 30, 1959.

Harold K. Wood, U. S. Atty., Henry P. Sullivan, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Raymond J. Bradley, Jacob Kossman, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

Defendant was tried to a jury and found guilty on all three counts of the indictment. Count one charged him with violating Section 894(b) (2) (C) of the Internal Revenue Code of 1939,[1] by willfully attempting to evade part of the estate tax due on the estate of Winfred S. Hurst, deceased. The second and third counts of the indictment charged violations of Section 7207 of the Internal Revenue Code of 1954,[2] by the submission

---

1. 26 U.S.C. § 894(b) (2) (C).

2. 26 U.S.C. § 7207.

of false and fraudulent documents to the Secretary of the Treasury.

On appeal, the judgment was affirmed as to count one of the indictment, and reversed, with the Government's acquiescence, as to counts two and three. 3 Cir., 1958, 255 F.2d 851. The Supreme Court denied certiorari. 1958; 358 U.S. 817, 79 S.Ct. 27, 3 L.Ed.2d 59.

The case is now before us on defendant's motion for a new trial on the ground of newly discovered evidence.

The evidence chiefly relied upon is unusual in character, and presents an important question bearing on the administration of criminal justice. Many months after the defendant's conviction in this case and during the pendency of his appeal therefrom, we received credible information which appeared to indicate that, before the rendition of the verdict, one or more of the trial jurors had had knowledge or information of the defendant's former conviction for income tax evasion, from which an appeal was then pending.

We became concerned whether the defendant might have been deprived of a fundamentally fair trial by the failure of one or more jurors to disclose pertinent information responsively to the voir dire examination, or by the impropriety of consideration, by one or more jurors, of information about defendant's prior conviction, inadvertently acquired during this trial. In the interest of justice we determined that an inquiry should be conducted. After conferences with the United States Attorney and defendant's counsel, the defendant and all counsel agreed that we should conduct such an inquiry without participation by or the presence of the defendant or any counsel.

At defendant's trial each juror and alternate juror had been carefully examined on voir dire before acceptance, and each had disavowed any knowledge about the defendant.

For the purposes of the inquiry all the trial jurors and alternates, except one who was then in Texas and unavailable, were summoned and interrogated by the trial judge. The interrogation was taken stenographically by the official court reporter and thereafter transcribed. Decision was deferred until the defendant's appeal, then pending, and his subsequent petition for writ of certiorari to the Supreme Court of the United States, had been determined.

We were satisfied from the interrogation that, at the time the jury was sworn, no juror was aware of the defendant's prior conviction. The interrogation did reveal, however, that four jurors had become aware of that conviction during the trial. One juror read a mention of the former conviction in a newspaper article. The other three jurors heard a juror make casual mention of the former conviction. There was no other or further discussion of the subject.

We prepared and filed a memorandum in which we recited the facts substantially as above stated. For the reasons set forth in the memorandum, we reached the conclusion that the verdict should not be disturbed.

Thereafter, defendant filed the present motion, based partially upon the facts appearing in our memorandum. At the oral argument, we withdrew our conclusions, since, as we then stated, we felt that, insofar as the motion was based upon the ground of the jury "problem", defendant should not be faced with a prejudgment on the serious question presented.

At oral argument, we also received and made a part of the record two news articles which appeared in the Philadelphia newspaper in which the one juror had seen mention of the previous conviction. The articles appeared in the issues of March 27 and 28 (1957), respectively, while the jury was sitting on the case. The article of March 27 appeared under a one-column headline reading: "Alker on trial for second time in tax fraud." The opening paragraph stated:

"Harry J. Alker, Jr., 72, Philadelphia and Norristown attorney convicted last fall of a $185,000 income tax fraud, went on trial yesterday

in U. S. District Court here on charges of conspiring to defraud the Government of Federal estate taxes."

The last three paragraphs, under the sub-headline, "sentenced to year," read:

"Last October Alker was sentenced to a year and a day in prison and fined $30,000 following his conviction by a jury of evading $185,000 in income taxes for the years 1947 through 1950.

"The state of Alker's health featured that trial, both in testimony and in his own courtroom appearance. In the early stages he showed up in a wheelchair and later on a stretcher. The defense claimed mental incompetency in seeking a mistrial. The plea was rejected. He was freed in $2000 bail pending an appeal.

"Two weeks ago Orphans' Court Judge Harold D. Saylor removed Alker as coexecutor and cotrustee of the residuary trust created under the will of George W. Rentschler, retired plumbing and heating contractor, who died in 1954."

The article of March 28 concluded with the following paragraph:

"Alker is at present free in $2000 bail on appeal of a one-year prison sentence and $30,000 fine following conviction last fall of a $185,000 income tax fraud."

It thus appears that at least four jurors knew of the defendant's prior conviction of an offense similar in nature to that on trial. One of these four may very well have read of defendant's removal as co-executor and co-trustee by the state Orphans' Court, and have noted the discrediting implication that Alker had feigned mental and physical disability in the earlier trial.

It is the Government's position that these disclosures resulted in no harm to the defendant. Though its counsel made no attempt to prove Alker's earlier conviction, the Government now confidently asserts that, since Alker testified, he could have been interrogated about his prior conviction to attack his credibility, and that the entire jury could thus have properly acquired the same information. Certainly the Government would not have been entitled to elicit all the information which appeared in the news articles, nor are we quite persuaded that Alker could have properly been examined about his former conviction while his motion for a new trial upon that charge was still pending and undetermined. Our research discloses a definite split of authority on the question, and we think it unnecessary now to pursue the subject. The real desideratum is that, if the Government had properly established the prior conviction, the trial judge would have carefully instructed the jury as to the limited purpose for which that conviction could be considered and would have expressly instructed the jury of its duty to disregard it as substantive proof of the commission of the crime on trial.

■ Courts have recognized that it is impossible to formulate any rule of universal application as respects the issue of prejudice in cases of this character. Too much depends upon manifold considerations of time and place and circumstances, as well as of substance and context. Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L. Ed.2d 1250, while not controlling, is highly instructive. There, the defendant was convicted by a jury of unlawfully dispensing certain drugs without a prescription from a licensed physician. He did not take the stand, and offered no evidence. His defense was entrapment. The trial judge refused the Government's offer to prove that defendant had previously practiced medicine without a license, as tending to refute the defense. During the trial several of the jurors read newspaper articles containing such information, and also stating that defendant had a record of two previous felony convictions. The court, reversing a divided Court of Appeals and ordering a new trial, stated (360 U.S. at page 312, 79 S.Ct. at page 1173):

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L. Ed. 1021. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. *The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 218, 93 L.Ed. 168. It may indeed be greater for it is then not tempered by protective procedures.*" (Emphasis supplied.)

 Just what part the extra-judicial information in the instant case played in the determination of the verdict can be left only to conjecture. We are convinced, however, that its potentialities for harm were very great. The danger is that jurors may have considered the prior conviction—particularly in view of the similarity of the offenses—as indicative of Alker's criminal propensities for tax evasion and may have considered this as indicating a likelihood that Alker committed the offense then charged. This was the one purpose, of course, for which it could not be used. 22 C.J.S. Criminal Law, § 682. The jury was carefully instructed that their verdict was to be based, and based alone, on the evidence presented at the trial and the law as stated by the trial judge. Their oath required them to render such a verdict. We do not doubt the jurors' devotion to their sworn duty, or to the cause of justice under the law. The relevant inquiry, however, is whether the four or more jurors could, with the best will, cast entirely from their minds the knowledge of the defendant's past record,—whether, in short, they could disabuse their minds of a perhaps unconscious prejudice or predisposition against the defendant. After most careful consideration, we are persuaded that the weight of probabilities rests with the defendant's contention, and that justice demands the award of a new trial.

Order

Now, December 30, 1959, it is ordered that the judgment and sentence is vacated and the defendant, Harry J. Alker, Jr., is granted a new trial.