**Mary Evelyn JACO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–01129–CR.**

Court of Appeals of Texas, Dallas.

Jan. 14, 1983.

Robert E. Richardson, Jr., Sherman, for appellant.

Stephen Davidchik, County Atty., James H. Holt, Asst. Dist. Atty., Dallas, for appellee.

Before GUITTARD, C.J., and CARVER and FISH, JJ.

CARVER, Justice.

On our own motion, our prior opinion of December 10, 1982, is withdrawn and the following opinion substituted.

Mary Evelyn Jaco appeals her conviction of theft and her sentence of 6 years' confinement and a fine of $2,000.00. Mrs. Jaco urges that she is innocent in fact, or at least, innocent by presumption of law, and that the evidence offered by the State was insufficient to support the jury's declaration otherwise. We agree; consequently, we reverse and enter a judgment of acquittal.

The indictment alleges that Mrs. Jaco did "unlawfully, intentionally and knowingly appropriate property, to wit: A DIAMOND RING of the value of more than $200.00 but less than $10,000.00 from LEE A. CLARK without the effective consent of LEE A. CLARK, the owner thereof, and with intent to deprive said owner of said property, against the peace and dignity of the State." The ownership of Lee A. Clark, as well as what he owned, and what Mrs. Jaco was accused of stealing, is founded upon the last will and testament of Louise D. Templeton, deceased, offered by the State as its Exhibit 7. The will recites:

> I give, devise and bequeath to ANN and LEE CLARK one tall four light floor lamp in the living room, one cutglass ice cream dish on the coffee table in the living room, one tall cutglass vase on the coffee table in the living room, one large silver serving spoon with berrier on it, one set of whisky bottle and glasses with tray, the wicker table and the lamp on it in the West bedroom, twelve cutglass salt dishes, one wine decanter with tear drop stopper and *my large diamond* ring. [Emphasis added]

This will, while offered for probate, has not been shown to have been probated by our record, and both counsel conceded in their argument that no probate has yet been ordered, although there is pending an application, and a contest thereof, before the probate court.

While the actual existence of, as well as the theft of, a diamond ring is disputed, the remaining facts of the case are without dispute. In February 1980 Louise Temple-

ton, an elderly widow, was in a Sherman hospital in a condition leaving little expectation that she would recover. Mrs. Templeton's friend and banker, Mrs. Betty Dodson, summoned a Sherman attorney, Paul Brown, to consult Mrs. Templeton as to her last testament. On February 7, 1980, Brown, his partner John Hill, and Mrs. Dodson were present in Mrs. Templeton's hospital room when she executed a will prepared by Brown in reliance upon his earlier consultation. Mrs. Templeton, although described as a literate person, executed the will by her mark; explainable, perhaps, because she was then attached to intravenous tubes, a stomach tube, and a catheter tube, as well as under medication for pain. Remarkably, Mrs. Templeton recovered enough from this episode to return to her Sherman home for a several weeks stay. In May 1980, Mrs. Templeton returned to the hospital and finally expired in the early morning hours of May 21, 1980.

Mrs. Jaco was a niece by marriage of Mrs. Templeton and, in common parlance, her closest relative. Upon Mrs. Templeton's death, the hospital telephoned Mrs. Jaco to "make arrangements." Mrs. Jaco went to the hospital at 7:00 a.m. where she "arranged" for a funeral home to pick up the body of Mrs. Templeton. Mrs. Jaco also received all the personal effects Mrs. Templeton had with her during her hospitalization. These items included a personal pillow and Mrs. Templeton's dentures, as well as other items not thought worthy of description by the witnesses, save for a ring. Several witnesses stated that Mrs. Templeton entered the hospital wearing a ring and continued to wear it until it was removed the day before her death when it was taken off her finger at the insistence of her doctor and placed in the care of the hospital. The hospital administrator, Bob Berryhill, testified that on May 20, 1980, he placed Mrs. Templeton's ring in a "hospital valuables envelop"; licked and sealed it; wrote thereon: "Diamond ring with ring retainer"; and put the envelope in a safe. The following morning, after Mrs. Templeton's death and Mrs. Jaco's arrival, the hospital clerk could not find the envelope in the hospital safe (having limited access to hospital employees and ordinarily employed for storing patients' valuables), but discovered the envelope in a second hospital safe with general access to hospital employees. When discovered by the clerk, the envelope was not sealed (licked and sealed), but closed by "scotch tape." The hospital clerk testified that she requested, and Mrs. Jaco signed, a receipt stating: "Diamond ring with ring retainer ... Estimated value $ unknown ... Mary Evelyn Jaco—niece ... Property received on May 21, 1980."

During the same day of May 21, 1980, Lee Clark, who had been bequeathed a "large diamond ring" in the will prepared by attorney Paul Brown, hired Brown's law firm to make application and secure Clark's appointment as temporary administrator of the estate of Louise Templeton, deceased. Clark's appointment was made that same day and Clark was empowered: "To take possession and/or control of the real property situated at 643 Kessler, Sherman, Texas, and all improvements and personal property located thereon." Clark's ownership of the ring is not otherwise shown.

On June 4, 1980, Clark filed a petition with the Probate Court seeking to require that Mrs. Jaco surrender to him, as temporary administrator, the ring for which she had receipted the hospital. Upon a subsequent order of the Probate Court, Mrs. Jaco surrendered to Clark a ring which she asserted was the same ring she received for her receipt. Clark asserted the ring surrendered by Mrs. Jaco was not a diamond ring and was different in design than the ring seen on Mrs. Templeton. These contrary assertions produced the grand jury indictment of Mrs. Jaco quoted above.

It is evident that, in order to convict Mrs. Jaco under the indictment brought, the proof of the State must show that she took a *diamond* ring and that the diamond ring taken had the *value* alleged. On appeal, Mrs. Jaco urges that these necessary elements of proof are missing from the record; consequently, there is insufficient evidence to sustain her conviction. The State con-

cedes that it was unable to offer direct evidence of either element of proof but urges that the record is replete with "reputation" evidence that the ring of Mrs. Templeton was a "diamond" and also replete with evidence that a diamond of the size and character, as reputed, had a value within the range of the indictment. We are persuaded that the State is unable to rest upon mere reputation to prove that a stone mounted upon a ring (possessed in turn by Mrs. Templeton, the hospital administrator, the hospital clerk, and Mrs. Jaco) was a diamond. Professor Wigmore,[1] and Professor McCormick[2] state in their treatises, with supporting precedent, that reputation is a form of hearsay which is admissible as an exception but only as to land boundaries, events of general history, personal character, and marriage, as well as other facts of family history. See Hamill v. Bahr, 271 S.W.2d 319, 320 (Tex.Civ.App.—Galveston 1954, no writ) (land boundaries established); Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841, 843 (1923) (events of general history); and Johnson v. State, 102 Tex.Cr.R. 409, 278 S.W. 210 (1925) (personal character). The State offers no authority to support its argument, or which might refute these treatise authors; consequently, we hold that the reputation of the ring of Mrs. Templeton as a "diamond," whether given by her or attributed by others, is not sufficient to support Mrs. Jaco's conviction. Likewise, we hold that in the absence of some evidence that Mrs. Templeton's ring was a diamond ring, the testimony of value, as if the ring had a diamond mounted thereon, is insufficient to support the indictment.

■ Alternatively, the State points out that there was evidence that, prior to her death and in a conversation with third parties in the presence of Mrs. Jaco, Mrs. Templeton stated the ring she was wearing was a diamond ring. The State argues that, while such a statement would ordinarily be hearsay and, as such, neither admissible nor supportive of a fact finding, still, since Mrs.

Jaco was present at the time, such testimony was admissible and supportive of a fact finding as "an exception to the hearsay rule." We cannot agree. A statement of fact by a person not under oath as a witness and not tested by cross-examination is deemed to be without probative force. See Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 538 (Tex.1912) (hearsay evidence is without probative force); Maryland Casualty Co. v. Davis, 181 S.W.2d 107, 109 (Tex. Civ.App.—Galveston 1944, no writ) (sanction of oath and cross examination are required to make a witness's statements reliable); Byers v. Wallace, 87 Tex. 503, 28 S.W. 1056 (1894), rehearing denied 29 S.W. 760, 761 (Tex.1895); Western Union Telegraph Co. v. Rauch, 243 S.W. 526, 527 (Tex.Civ. App.—Galveston 1922, no writ); McCormick on Evidence § 245 (Cleary rev. 1972), and cases cited therein; 5 Wigmore § 1362 (Chadbourn rev. 1974). Such unworthiness of belief is not cured merely because of the presence of Mrs. Jaco at the time Mrs. Templeton made the statement. Mrs. Jaco's presence did not supply the moral force to tell the truth provided by the oath to a witness before the court. Nor did her presence impose a threat of prosecution for perjury such as reinforces the moral force to tell the truth when given the oath by a court. Nor did Mrs. Jaco's presence provide her a right to test Mrs. Templeton's statement of fact with cross-examination as would be accorded if Mrs. Templeton asserted the same fact before the court and jury. Nor can Mrs. Jaco's failure to dispute the statement when it was made be taken as an admission by her of its truth, since she was not shown to have been in a position to dispute it if it were false. Thus, Mrs. Templeton's statement in Jaco's presence is not within any exception to the hearsay rule; consequently, it was hearsay.

The State appears to argue that there is a unique exception to the hearsay rule applicable only in the trial of criminal cases. Our research has confirmed that there is a so-called exception commonly known as the

1. 5 Wigmore, Evidence § 1580–1626 (Chadbourn rev. 1974).

2. McCormick on Evidence § 324 (Cleary rev. 1972).

"Dallas Exception" in Dallas, the "Cleveland Exception" in Cleveland, and similarly in each locality.[3] Simply stated, the Dallas Exception to the hearsay rule holds that the mere presence of the accused when a third party asserts a fact outside of court makes the assertion subsequently admissible in court against the accused. Professor McElhaney urges that there is "some legitimacy" to the exception but only if:

> (1) it must have been made in the presence of the accused; (2) it must have been made within his hearing; (3) he must have understood it; (4) *it must have dealt with facts within his knowledge;* (5) he must have been able to speak; (6) he must have been psychologically free to speak; and (7) *the circumstances must naturally have called for a reply.* (Note, *Tacit Criminal Admissions,* 112 U.PA.L. REV. 210, 213 (1963). *See also United States v. Alker,* 255 F.2d 851, 853 (3d Cir.), *cert. denied,* 358 U.S. 817 [79 S.Ct. 27, 3 L.Ed.2d 59] (1958); *United States v. Troback,* 404 F.Supp. 1206, 1209 (E.D.Pa. 1975), *aff'd,* 544 F.2d 513 (3d Cir.1976). [Emphasis added][4]

We note at the outset that there was no showing that Mrs. Templeton's assertion met Professor McElhaney's fourth requirement that "it must have dealt with facts within his [Mrs. Jaco's] knowledge" or that Mrs. Templeton's assertion was such that it met his seventh requirement that "the circumstances must naturally have called for a reply." In the absence of a showing that Mrs. Jaco actually knew the ring exhibited by Mrs. Templeton was, in fact, a diamond and in the absence of circumstances being shown that would compel a niece-by-marriage to call her aunt a liar to her face, we hold that the "Dallas Exception," if any exists, did not make Mrs. Templeton's statement, quoted in court by a third party witness, admissible or supportive of Mrs. Jaco's conviction. Our research also has disclosed Texas cases apparently supporting the existence of the "Dallas Exception"; however, on close examination these cases appear either to reflect the seven predicates for admissibility prescribed by Professor McElhaney or to concern statements not within the hearsay rule, because they were admitted to prove relevant facts, such as the defendant's knowledge or intent, rather than for the truth of the matter asserted. *See Southall v. State,* 77 Tex.Cr.R. 490, 179 S.W. 872 (1915); *Miller v. State,* 143 Tex. Cr.R. 430, 158 S.W.2d 804 (1942); *Stallings v. State,* 476 S.W.2d 679 (Tex.Cr.App.1972); *Gibson v. State,* 516 S.W.2d 406 (Tex.Cr. App.1974).

■ We hold that Mrs. Templeton's statement, made before her death, in the presence of Mrs. Jaco and others, that her ring was "a diamond ring" was inadmissible hearsay because its truth depended on the credibility of a person neither under oath nor subject to cross-examination; consequently, such evidence fails to support Mrs. Jaco's conviction.

■ Lastly, the State argues that the proof was strong that Mrs. Jaco received and retained a ring of some kind and that we should consider the indictment's "diamond ring" as being merely descriptive rather than the essence of the offense requiring particular proof. We cannot agree because the indictment, in a form chosen by the State, constitutes the only notice given the accused and the State is bound to prove the crime charged or the accused is entitled to an acquittal. In *Ware v. State,* 148 Tex.Cr.R. 98, 184 S.W.2d 619 (1944), the indictment charged theft of a "gold watch," but the proof failed to show the watch taken was "gold." Here, the State may have shown that Mrs. Jaco had taken a ring, but no proof was offered that the stone in the ring was a "diamond" as set out in the indictment. Consistent rulings are seen in *McGee v. State,* 4 Tex.App. 625 (1878), where proof of theft of "sheepskin" gloves was insufficient to convict under an indictment charging theft of "buckskin" gloves; in *Snoga v. State,* 46 Tex.Cr.R. 419, 80 S.W. 625 (1904), where proof of a theft

---

3. McElhaney, 1 The Rev. of Litigation 93, 112 (1980).

4. *Id.* at 113.

of a steel *strap* was insufficient to support to convict under an indictment charging theft of a steel *trap;* and in *Poston v. State,* 58 Tex.Cr.R. 583, 126 S.W. 1148 (1910), where proof of theft of a mixed bag of nuts, including walnuts, was insufficient to convict under an indictment charging theft of a bag of *walnuts.* We hold that the indictment's term "diamond ring" was not merely descriptive but constituted the essence of the charge, variance from which in the proof offered must result in acquittal. Simply put, the State over-indicted and under-proved its case against Mrs. Jaco.

The conviction of Mrs. Jaco is reversed for insufficient evidence. Consequently, a judgment of acquittal is rendered. *Ortiz v. State,* 577 S.W.2d 246 (Tex.Cr.App.1979).

Reversed and rendered.