Lonnie Gene EDWARDS and Johnnie Lynn Edwards, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 05–89–00946–CR, 05–89–00947–CR.

Court of Appeals of Texas, Dallas.

June 25, 1991.

Discretionary Review Refused Oct. 16, 1991.

Bruce Anton, Dallas, for appellants.

Anne B. Weatherholt, Dallas, for appellee.

## OPINION

OVARD, Justice.

Lonnie and Johnnie Edwards appeal their respective convictions for the offense of possession of cocaine with intent to deliver. After a joint jury trial, the jury sentenced each of the twin brothers to five years' imprisonment and a $1000 fine, probated for five years. In three points of error, appellants contend (1) that the evidence is insufficient to support their convictions, (2) that the trial court erred in not requiring the State to disclose the identity of the confidential informant, and (3) that the trial court improperly refused to hold an *in camera* hearing on the informant's identity. We affirm the trial court's judgments.

## FACTS

Dallas Police Officer Kenneth Budjenska obtained a search warrant for apartment 106 of a Dallas apartment complex based on information that he had received from a confidential informant regarding drug trafficking at that address. At the time police executed the search warrant, no one was inside the apartment, and it contained only a few items of furniture. Police found in plain view inside the apartment fifty-five packets of crack cocaine on the dining room table, two shotguns, and an automatic pistol. They found no documents in the apartment, or elsewhere, which linked appellants to the apartment. The police also found no money or keys in the apartment or on appellants. The police did not check for fingerprints in the apartment or on the guns.

Dallas Police Officers Steven Claggett and Thomas Wafer handcuffed and detained appellants outside apartment 106. When the officers arrived, appellants were the only two persons in the area and stood about twenty-five to twenty-eight feet from the apartment door. They made no attempt to flee. Appellants were dressed identically except for different colored tennis shoes. Officers Claggett and Wafer spoke with the apartment manager. The manager stated that appellants lived in apartment 106, but he could not provide the officers with a copy of the lease for apartment 106. He did not appear as a witness at trial.

Both appellants testified. They stated that they were at the apartment complex visiting their stepfather's girlfriend and that the police arrested them as they were

leaving the complex. Appellants testified that they neither lived at nor had control over apartment 106. Both said they lived with their brother and his common-law wife. The stepfather's girlfriend did not testify.

## SUFFICIENCY OF THE EVIDENCE

In their third point of error, appellants claim that the evidence is insufficient to support their convictions. They argue that no evidence affirmatively links them to the cocaine found in apartment 106.

 When determining whether the evidence is sufficient to support the conviction, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex. Crim.App.1988). We use the same standard for both direct and circumstantial evidence cases. When reviewing the sufficiency of circumstantial evidence, we consider whether the evidence supports a reasonable hypothesis other than the defendant's guilt. *Belyeu v. State*, 791 S.W.2d 66, 68 (Tex.Crim.App.1989). However, the State need not prove to a moral certainty that the circumstances presented exclude every hypothesis that another person may have committed the offense. It must only exclude every reasonable hypothesis raised by the evidence that tends to exculpate the defendant. If the combined and cumulative force of all the incriminating circumstances warrant a conclusion of guilt, the evidence is sufficient. Not every fact need point directly and independently to the defendant's guilt. *Brandley v. State*, 691 S.W.2d 699, 703 (Tex.Crim.App.1985). The jury, as the trier of fact, remains the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. The jury may accept or reject all or any part of any witness's testimony. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982); *see* TEX.CODE CRIM.PROC. ANN. arts. 36.13 & 38.04 (Vernon 1981).

 To show unlawful possession of a controlled substance, the State must prove that the accused exercised care, control, or management over the contraband, and that the accused knew the matter possessed was contraband. *Humason v. State*, 728 S.W.2d 363, 365 (Tex.Crim.App. 1987). The evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. The State need not prove that the defendant had exclusive possession of the contraband. Evidence that shows the accused jointly possessed the contraband with another is sufficient. *Ayers v. State*, 570 S.W.2d 926, 928 (Tex.Crim.App.1978). The State establishes this affirmative link by showing additional facts and circumstances that indicate the accused's knowledge and control of the contraband. *Dubry v. State*, 582 S.W.2d 841, 843 (Tex.Crim.App.1979). Relevant facts and circumstances linking an accused to the contraband include whether the accused owned, rented, or controlled the place where the police found the contraband, and whether the accused had convenient access to the contraband. *Guiton v. State*, 742 S.W.2d 5, 8 (Tex.Crim.App.1987) (op. on PDR). Other factors include whether the police found the contraband in plain view or in areas private to the accused. *Hughes v. State*, 612 S.W.2d 581, 582 (Tex. Crim.App. [Panel Op.] 1981); *Smith v. State*, 737 S.W.2d 933, 941 (Tex.App.—Dallas 1987, pet. ref'd). First, we consider whether the evidence affirmatively links appellants with the apartment. Then we determine whether additional links prove that they jointly possessed and controlled the contraband found within the apartment. *See Herrera v. State,* 561 S.W.2d 175, 179 (Tex.Crim.App.1978).

### *Evidence Linking Appellants to Apartment 106*

#### Officer Claggett's testimony

During direct examination, Officer Claggett testified that the apartment manager told him that appellants lived in apartment 106. Defense counsel objected to the manager's statement to the police on hearsay

grounds, and the court sustained the objection. However, defense counsel later solicited the same information from Officer Claggett on cross-examination when he asked an open-ended question. The pertinent part of the cross-examination proceeded as follows:

Q: What would you have done if there was another set of twins?

[PROSECUTOR]: Judge, I'm going to object to that question as being speculation.

THE COURT: Go ahead and answer.

A: If there would have been another set of twins, I probably still would have had to arrest these two.

Q: What if one twin was sitting next to John—standing next to Johnnie and another identical twin, black male about the right size, maybe, was standing next to Lonnie, which one would you have arrested?

A: Johnnie and Lonnie.

Q: Why?

A: Because the apartment manager told us they lived there.

[Defense Counsel]: Your Honor, I object to that. He was instructed earlier that he was not to go—

[The Court]: I think you solicited the answer.

Defense counsel continued questioning Officer Claggett. Shortly thereafter, he again elicited the information the police had received from the apartment manager:

Q: How did you know there was an apartment manager?

A: I don't recall if it said it on his door, or sign out front that said apartment manager and the room number.

Q: You went there personally?

A: Yes, I did.

Q: You are telling us that as you just— excuse me. And you are trying to tell us that he told you these people occupied the premises?

A: That's correct, he did.

 Defense counsel entered no objection to Officer Claggett's response. Defense counsel must object every time allegedly inadmissible evidence is offered.

*Hudson v. State,* 675 S.W.2d 507, 511 (Tex. Crim.App.1984). Where the court erroneously admits testimony over defendant's objection, and the defendant later allows the court to admit the same testimony or testimony to the same effect without objecting to it, defendant waives his prior objection. *Kirvin v. State,* 575 S.W.2d 301, 302 (Tex.Crim.App. [Panel Op.] 1978). However, the defendant does not waive the harmful effect of improperly admitted evidence when he seeks to meet, destroy, or explain it. *Maynard v. State,* 685 S.W.2d 60, 65 (Tex.Crim.App.1985). Defense counsel must press the court to the point of procuring a ruling to his objection, otherwise he waives that objection. *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Crim.App. 1984). A nonspecific comment by the court does not equate to a ruling. *See id.; Mayberry v. State,* 532 S.W.2d 80, 82 (Tex. Crim.App.1975).

 Defense counsel waived any objection to the manager's statements to the police. First, defense counsel solicited the information when he asked Officer Claggett an open-ended question. Second, he did not press the court to the point of procuring a ruling to his objection and thus waived not only that objection, *see Lewis,* 664 S.W.2d at 349, but also his prior objection to this evidence, *see Kirvin,* 575 S.W.2d at 302. Third, defense counsel later intentionally elicited similar testimony from Officer Claggett without raising an objection. Finally, the intentionally elicited testimony was from Officer Claggett, not appellants, and in any case does not meet, destroy, or explain the manager's statements to Officer Claggett.

### Officer Budjenska's Testimony

After appellants testified and defense counsels rested their cases, the State recalled Officer Budjenska. He testified that, during the book-in process, he asked appellants where they lived. One appellant indicated that *they* lived in apartment 106. During cross-examination, Officer Budjenska further testified, without objection, as follows:

Q: Isn't it true that you are the one that suggested that that is their street address; that they lived there?

A: No, sir, it's not true.

Q: They gave you that address? Is that what your testimony is?

A: No, they didn't specifically give me the address. I said, where did they live. They indicated the apartment we had gone to and said was [sic] an uncle. I agreed—

Q: As a matter of fact, you insisted they lived at 4515, Apartment 106, isn't that true?

A: No that is not true.

\* \* \* \* \* \*

Q: Okay. So when you say 106, that was exactly your view of what they were saying. They never said that apartment. They said that complex, if anything, isn't that true?

A: Technically, they never mentioned 106.

Q: Technically, they never mentioned 106?

A: That is true. They didn't say 106.

Q: So the 106 in your report is totally your opinion of where they lived? Yes or no?

A: I'm sorry. I'm trying to reconstruct and make sure what I'm answering you is what you are saying. Yes, I drew certain conclusions. I assumed we were all talking about the same apartment that all the police went in, and the bomb went off in. It was very evident the apartment we were talking about, yes. I did reach the conclusion that we were talking about the same apartment.

On redirect, Officer Budjenska testified, without objection, as follows:

Q: Officer, why did you assume when you were talking to these Defendants about where they resided, that y'all were both talking about Apartment 106?

A: All the activity that night centered around 106. We were there enough time to where there was a lot of activities in and out of 106.

Q: And, Officer, again, what did they say that leads you to believe that that was the Apartment 106 they were referring to?

A: I asked them where they stayed. They said, we stayed in that apartment with our uncle, referring to Apartment 106.

On recross, defense counsel asked Officer Budjenska whether he based the arrest solely on the information he received from the confidential informant. Without objection, Officer Budjenska testified:

A: Are you asking me if that is the only information that caused me to do that?

Q: To arrest these boys out in front of that apartment?

A: No, we had—I was told we had a manager that said they lived there.

Q: You didn't know that when you came in?

A: When I came in where?

Q: In the complex. The manager wasn't standing—

A: No, I didn't know that.

Q: The only thing that caused you to arrest these boys outside this complex was that the twins were there, and that was the—is your affirmative link, is that not correct?

A: Maybe I'm getting confused when exactly—the point of arrest was when at the end of the case, when I decided, you know, for sure, who was going to jail. I knew both of that information. I knew the [confidential informant's] information, and I knew the information that had been told to me by the officers about the manager. That is when I personally made a decision on who was going to jail.

 Statements, other than ones made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted, constitute hearsay. TEX.R.CRIM.EVID. 801(d). A party's own statements, made in his individual capacity, when offered against him do not constitute hearsay. TEX.R.CRIM.EVID. 801(e)(2)(A). The State may use the statement of an accused against him if it appears that the accused gave the statement freely and vol-

untarily, without compulsion or persuasion. TEX.CODE CRIM.PROC.ANN. art. 38.21 (Vernon 1979). This means that the statement must not result from custodial interrogation. *See Gauldin v. State,* 683 S.W.2d 411, 413 (Tex.Crim.App.1984) (op. on PDR). Questions routinely asked during arrest and book-in, such as appellant's name, address, and social security number, are not interrogation. *Garner v. State,* 779 S.W.2d 498, 503 (Tex.App.—Fort Worth 1989, pet. ref'd).

█ When Officer Budjenska asked them their address, one appellant said that *they* lived in the apartment where the events occurred, which Officer Budjenska understood to mean apartment 106. The question was not "interrogation." *Garner,* 779 S.W.2d at 503. Further, appellant made the statement in his individual capacity, and that statement was then used against him. Therefore, the statement was not hearsay. The statement was an admission by that appellant that he lived in apartment 106 and was also evidence that the State could use to show that the other appellant also lived in apartment 106.

### Summary

█ On appeal, we must consider unobjected-to hearsay in determining the sufficiency of the evidence to sustain a conviction. *Harris v. State,* 727 S.W.2d 537, 541 (Tex.Crim.App.1987). Before 1986, hearsay admitted without objection had no probative value and could not support a finding of fact or a verdict. *Mendoza v. State,* 522 S.W.2d 898, 899 (Tex.Crim.App.1975). However, rule 802 of the Texas Rules of Criminal Evidence now states in pertinent part: "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." TEX. R.CRIM.EVID. 802. The new rule does not automatically accord probative value to hearsay evidence. The trier of fact has the responsibility to determine the probative force of particular items of evidence.

Once the trier of fact has made its decision assessing and weighing the probative value of the evidence in its determination of guilt or innocence, an appellate court does not have the power to step in and reevaluate the probity of an individual item of evidence in its review of the sufficiency of the evidence to support the verdict. *Fernandez v. State,* 805 S.W.2d 451, 456 (Tex.Crim.App.1991).

█ Officer Claggett testified, without objection, that the manager told him that the appellants lived in apartment 106. Officer Budjenska testified, without objection, that he did not decide who was going to jail until after he received the information about the manager's statement. This testimony constitutes unobjected-to hearsay. This Court must consider it in determining the sufficiency of the evidence. *See Harris,* 727 S.W.2d at 541. Further, Officer Budjenska testified, without objection, that one appellant told him *they* lived in the apartment searched by the police. Appellant's statement was made during the normal arrest procedure. The statement was an admission as to whichever appellant answered the question, and served as some evidence that the other appellant lived in apartment 106. A reasonable trier of fact could find beyond a reasonable doubt from this testimony that both appellants exercised control over apartment 106.

### Evidence Linking Appellants to the Contraband

█ Officers Claggett and Wafer both explained the typical method used by crack dealers to market their goods. In a typical operation, the house or apartment is largely devoid of furnishings or personal property. There is no drug paraphernalia or evidence of on-premises drug usage. Large amounts of controlled substances, packaged for delivery, are kept in the crack house in an area easily accessible to the dealers. In addition, crack houses usually contain weapons for the dealers' protection and a large wooden block to barricade the door. Dealers do not wait for customers inside the crack house. They typically leave all drugs inside and stand outside awaiting customers. The dealers accompany the customer inside for the transaction, then go outside again. The dealers try to

distance themselves from the illegal contraband. The facts in this case correspond to the "typical" crack house operation.

Officer Budjenska testified that the police found the drugs, fifty-five individual packets of crack cocaine, lying in plain view on the dining room table inside apartment 106. The testimony that appellants had control of the premises, coupled with the large amount of contraband found in plain view in a common area of the apartment, sufficiently establishes that appellants jointly possessed and controlled the contraband. *See Herrera*, 561 S.W.2d at 179; *Turner v. State*, 543 S.W.2d 629, 631 (Tex. Crim.App.1976); *Estrada v. State*, 643 S.W.2d 753, 756–57 (Tex.App.—San Antonio 1982, no pet.). Officer Claggett additionally linked appellants to the contraband when he testified that appellants were the only persons in the area, and they stood twenty-five to twenty-eight feet from the apartment door. He also testified that the only entrance to apartment 106 was within their view and easily accessible to them. *See Guiton*, 742 S.W.2d at 8.

### Conclusion

The facts surrounding the search and arrest that link appellants to the contraband include:

(1) the search turned up drugs in plain view, *see Siroky v. State*, 653 S.W.2d 476, 479 (Tex.App.—Tyler 1983, pet. ref'd);

(2) the drugs were conveniently accessible to appellants, *Guiton*, 742 S.W.2d at 8;

(3) appellants controlled the place where the drugs were found, *Guiton*, 742 S.W.2d at 8; *Isaacs v. State*, 770 S.W.2d 76, 79 (Tex.App.—El Paso 1989, pet. ref'd).

Reviewing this evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We overrule appellants' third point of error.

### INFORMANT'S IDENTITY

In their first and second points, appellants contend that the trial court erred in not requiring the State to disclose the identity of the confidential informant and by refusing to have an *in camera* hearing to determine whether that information would be admissible. Appellants argue that disclosure of the informant's identity was necessary because his testimony was essential to a fair determination of the cases against them. They cite *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and rule 508 of the Texas Rules of Criminal Evidence.

Rule 508 states in pertinent part:

(a) Rule of Privilege. The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

. . . .

(c) Exceptions.

. . . .

(2) *Testimony on Merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

TEX.R.CRIM.EVID. 508. The Supreme Court explained in *Roviaro* that where disclosure of an informant's identity, or the contents of his communication, is relevant and helpful to the defense, or is essential to a fair determination of a cause, the privilege must give way. *Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 627–28. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the defendant challenged the legality of a warrantless search and claimed that the communications of an informer provid-

ed probable cause. *Id.* In those cases, the courts did not require the government to disclose the informer's identity if there was sufficient evidence apart from his confidential communication. *See id.*

 To determine whether the trial court erred by not requiring the State to disclose its informer's identity, we consider all of the circumstances of the case. *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628. Rule 508 of the Texas Rules of Criminal Evidence requires an *in camera* hearing only if it appears that the informant's testimony is necessary to a fair determination of the issues of guilt and innocence. TEX.R.CRIM. EVID. 508. Here, the informant was not present at the time of execution of the warrant or of the arrest. Neither did he participate in the offenses for which appellants were arrested, charged, and convicted. The informant's testimony would have been neither relevant nor helpful. Further, his testimony would have related to events that occurred before the night of the arrests and would constitute inadmissible evidence of extraneous offenses. Therefore, the informant's testimony was not essential to a fair determination of these causes and no *in camera* hearing was required. We overrule appellants' first and second points of error.

We affirm the trial court's judgments.

ENOCH, WHITHAM, STEWART, LAGARDE, THOMAS, KINKEADE, BURNETT, WHITTINGTON and CHAPMAN, JJ., agree with majority opinion.

BAKER, dissents with an opinion in which ROWE and MALONEY, JJ., agree.

BAKER, Justice, dissenting.

I respectfully dissent. Officer Budjenska's informant described identical twins, dressed exactly alike except for different colored sneakers.

Q. [PROSECUTOR] What physical description did you have?

A. [OFFICER WAFER] We were given a physical description from the search warrant at the time before we made the execution of the warrant. Thing stuck in my mind was the twins.

The uniqueness of the description permeates the case. It sticks in everybody's mind. It silently but impermissibly validates the majority's sufficiency analysis.

This case presents three complex probity questions. The majority avoids discussion of the issues by finding appellants waived their objections to inadmissible hearsay evidence. The majority then grants probative value to what it finds to be unobjected-to hearsay. Left unresolved is whether we give probative value (1) on the issue of guilt-innocence to a statement admitted for the limited purpose of showing only that the statement was made; (2) to inadmissible, objected-to hearsay; and (3) to an expert's opinion that a defendant is guilty as charged. To achieve its desired result, the majority abdicates our judicial responsibility by closing its eyes to these important questions. The issues are squarely before us. The trial court and counsel have done their jobs well. We should now do ours.

Five pieces of evidence are present in the case: (1) appellants met the description given by a confidential informant who had made a controlled buy at Apartment 106 the night before appellants' arrest; (2) after their arrest one of the appellants told an officer they lived in Apartment 106; (3) the apartment manager told an officer the twins lived in Apartment 106; (4) the premises had the characteristics of a typical "rock house"; and (5) the cocaine was in plain view in Apartment 106.

The majority makes two mistakes. It erroneously includes evidence in its sufficiency analysis which it should not consider. In finding appellants waived their hearsay objections, the majority turns an astigmatic eye to the record. It then compounds its error by taking a myopic view of precedent from the Court of Criminal Appeals in analyzing the sufficiency of the evidence it erroneously considers. The resulting opinion is not only shortsighted, but distorted. It permits the State to convict appellants on denunciation not in evidence and speculation unsupported by fact.

I conclude we should not consider the hearsay statements in making our sufficiency analysis. Even if we do consider that evidence, I do not find the evidence sufficient to support the convictions. These conclusions require more than the cursory analysis performed by the majority. They also require a review of the record as a whole.

## STANDARDS OF REVIEW

### 1. Sufficiency of the Evidence

We view the evidence in the light most favorable to the verdict. We determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The general rule is that we examine *all* the evidence before the trier of fact, both admissible and inadmissible, in making our sufficiency determination. *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Crim.App.1986); *see also Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). Before 1986, an exception to the general rule in Texas required a reviewing court to disregard inadmissible hearsay in determining sufficiency of the evidence. *See, e.g., Alvarado v. State,* 632 S.W.2d 608, 610 (Tex. Crim.App. [Panel Op.] 1982); *Gutierrez v. State,* 628 S.W.2d 57, 64 (Tex.Crim.App. [Panel Op.] 1980). We can trace this lone exception back to 1856: "But mere hearsay is not only not the best, nor even secondary evidence; it is no evidence." *Belverman v. State,* 16 Tex. 130, 131 (1856); *accord Ex parte Thrash,* 167 Tex.Crim. 409, 320 S.W.2d 357, 359 (1959). The Court of Criminal Appeals reconciled the apparent conflict in 1985:

> While it is true that, in determining sufficiency of the evidence, we consider all the evidence, admissible and inadmissible, we have never held that all evidence, admissible and inadmissible, has *probative* value and is capable of supporting a judgment. In fact, inadmissible hearsay is the only form of evidence that lacks probative value. Since such evidence lacks probative value, it is discounted when determining sufficiency questions.

Whether we do not consider inadmissible hearsay in determining sufficiency questions or whether we consider it and then treat it as "no evidence" is a semantic distinction without a difference. The point is that the hearsay rule can co-exist with the "consider all the evidence" rule when sufficiency questions are addressed if we consider the hearsay, but consider it as no evidence. As stated by appellant in his motion for rehearing: *Without* the State's evidence we have *no evidence* and *with* the State's evidence we have *no evidence.*

*Gardner v. State,* 699 S.W.2d 831, 835 (Tex.Crim.App.1985) (op. on reh'g) (emphasis in original). The *Gardner* court recognized the distinction between the admissibility of evidence and its probative value, but declined to overrule the exception. *Gardner,* 699 S.W.2d at 835 n. 5.

In 1986, the Court of Criminal Appeals expressly overruled *Gutierrez* and *Alvarado* (but not *Gardner*) and held that we are to "treat inadmissible hearsay *admitted without objection* the same as all other evidence in the sufficiency context, i.e., it is capable of sustaining a verdict." *Chambers v. State,* 711 S.W.2d 240, 247 (Tex. Crim.App.1986) (emphasis added). The *Chambers* court anticipated rule 802 of the Texas Rules of Criminal Evidence, effective September 1, 1986:

> Hearsay is not admissible except as provided by statute or these rules. Inadmissible hearsay *admitted without objection* shall not be denied probative value merely because it is hearsay.

Tex.R.Crim.Evid. 802 (emphasis added). I have examined *Chambers* and its progeny under rule 802. I conclude *Chambers* overrules *Gardner* to the extent *Chambers* grants probity to inadmissible hearsay admitted without objection. I interpret rule 802 as a waiver rule: if the defendant does not challenge the probative value of the hearsay by objecting to the evidence at trial, we will not deny probative value to the evidence solely on the basis that it is hearsay.

The Court of Criminal Appeals recently acknowledged this waiver policy behind the adoption of rule 802:

> In 33 Goode, Wellborn, and Sharlot, Texas Rules of Evidence: Civil and Criminal, § 802.1, at 571–572 (1988), the authors discussed this policy:
>
>> "The Texas drafters added it (the second sentence in Rule 802) in order to overturn a long-standing Texas doctrine by which inadmissible hearsay, admitted because of failure to object, was artificially deemed to have no probative value so that it could not in any way support a finding of fact or a verdict. Only one state, Georgia, maintains this view. In addition to being unsound in principle, the "hearsay-is-no-evidence" doctrine had pernicious practical consequences. It permitted a party without the burden of proof, by deliberately failing to object to hearsay when offered, to deceive a party having the burden of proof into believing he had adduced sufficient evidence on all necessary elements of his case, only to emerge from "behind the log" on appeal to argue, often successfully, that the verdict or judgment was not supported by evidence. Critics have urged for many years that this unsound and unfair concept be purged from Texas law.
>>
>> *Rule 802 does not accord probative value to hearsay evidence. It merely ensures that if hearsay is admitted by waiver, it will be treated like any other evidence admitted by waiver. That is, whatever rational probative value it may have will not be denied artificially as under prior law.*
>
> *Goode, Wellborn, and Sharlot,* at 571–72.
>
> The second sentence of Rule 802 was intended to discourage attorneys from deferring their objections to hearsay evidence because they were confident the evidence would be disavowed in an appellate sufficiency review. Rule 802 places the responsibility for waiver upon the party who fails to object.

*Fernandez v. State,* 805 S.W.2d 451, 455 (Tex.Crim.App.1991) (emphasis added). The *Gardner* rule denying probative value to hearsay retains its vitality when the hearsay is admitted *over objection* in a trial before a jury.[1]

### 2. Circumstantial Evidence

We test every circumstantial evidence case by its own facts to determine the sufficiency of the evidence to support the conviction. We apply the same standard to both direct and circumstantial evidence cases. *Butler,* 769 S.W.2d at 238. We also use a "reasonable hypothesis" analysis in circumstantial evidence cases in determining if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Herndon v. State,* 787 S.W.2d 408, 409 (Tex.Crim.App. 1990). We cannot sustain a conviction on

---

1. *Cf. Deason v. State,* 786 S.W.2d 711 (Tex.Crim. App.1990) (interaction between presumption that trial court as trier of fact disregards any inadmissible evidence admitted at trial with rule that reviewing court considers all evidence, both properly and improperly admitted, in sufficiency analysis; Court of Criminal Appeals considered improperly-admitted videotape in making its sufficiency analysis); *cf. also Nickerson v. State,* 810 S.W.2d 398 (Tex.Crim.App.1991). In a footnote, the *Nickerson* court observed that the *Deason* holding was not limited to bench trials because *Deason* relied on two jury trial cases. *Nickerson,* at 400 n. 2. We note one of those cases involved the erroneous admission of a confession. *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Crim.App.1986). The second case involved the erroneous admission of a "rap sheet" at the punishment phase in a capital case. The appellant contended the evidence was insufficient to support the jury's affirmative finding on the issue of future dangerousness, *even including the rap sheet.* The Court stated: *"In view of appellant's contention,* we are free to review both the properly and improperly admitted evidence." *Beltran v. State,* 728 S.W.2d 382, 389 (Tex.Crim.App.1987) (emphasis added). The *Nickerson* court discusses neither *Gardner, Chambers,* nor *Fernandez,* nor the effect of rule 802. We also note the Court of Criminal Appeals regards footnotes in its opinions as dictum, not holdings of the Court (although we observe the Court makes this statement in a footnote). *Young v. State,* No. 384–90, slip op. at 5 n. 5 (Tex.Crim.App. June 12, 1991). The Court of Criminal Appeals has not yet analyzed the question of the probative value of objected-to, inadmissible hearsay.

circumstantial evidence if the proof does not exclude every other reasonable hypothesis except the defendant's guilt. *Nickerson v. State*, 810 S.W.2d 398, 400 (Tex. Crim.App.1991). Proof amounting to only a strong suspicion or mere probability is insufficient. *Freeman v. State*, 654 S.W.2d 450, 454 (Tex.Crim.App.1983).

The standard does not require the State to prove to a moral certainty the circumstances exclude *every* other hypothesis. It must only exclude every *reasonable* hypothesis raised by the evidence which would tend to exculpate the defendant. It is enough that the cumulative force of all the incriminating circumstances warrants a conclusion of guilt. *Brandley v. State*, 691 S.W.2d 699, 703 (Tex.Crim.App.1985), *cert. denied,* —— U.S. ——, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990).

### 3. Possession of a Controlled Substance

To show possession of a controlled substance, the State must prove two elements: (1) the accused exercised care, control, and management over the contraband; and (2) the accused knew the substance was contraband. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). Possession is more than being where the action is. Possession means dominion and control. *McGoldrick*, 682 S.W.2d at 578. If the accused does not exclusively possess the place where the authorities find the contraband, the State does not prove the two elements of possession unless additional independent facts affirmatively link the accused to the contraband. *Guiton v. State*, 679 S.W.2d 66, 69 (Tex.App.—Dallas 1984), *aff'd,* 742 S.W.2d 5 (Tex.Crim.App. 1987).

Facts surrounding a search and arrest which link an accused to contraband include:

(1) the search turned up drugs in plain view or in areas "private" to the accused, *see Siroky v. State*, 653 S.W.2d 476, 479 (Tex.App.—Tyler 1983, pet. ref'd);

(2) the drugs were conveniently accessible to the accused, *Guiton*, 742 S.W.2d at 8;

(3) the accused owned, rented, or controlled the place where the drugs were found, *Guiton*, 742 S.W.2d at 8; *Isaacs v. State*, 770 S.W.2d 76, 79 (Tex.App.—El Paso 1989, pet. ref'd);

(4) the accused's name appeared on receipts, envelopes, and other documents found in the premises, *Herrera v. State*, 561 S.W.2d 175, 179 (Tex.Crim.App.1978); *Goodall v. State*, 774 S.W.2d 821, 821 (Tex.App.—Fort Worth 1989, pet. ref'd);

(5) other evidence showed the accused's occupancy of the premises, *see Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Crim. App. [Panel Op.] 1981);

(6) the accused had keys to the premises, *Garcia v. State*, 753 S.W.2d 187, 188 (Tex.App.—San Antonio 1988, pet. ref'd);

(7) other drugs or drug paraphernalia not included in the charge were present, *Earvin v. State*, 632 S.W.2d 920, 925 (Tex.App.—Dallas 1982, pet. ref'd);

(8) the accused had cash and weapons, *King v. State*, 710 S.W.2d 110, 113 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd), *cert. denied*, 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 59 (1987);

(9) eyewitnesses had seen the accused with the drugs, *Miller v. State*, 667 S.W.2d 773, 776 (Tex.Crim.App.1984);

(10) the accused used drugs, *see Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim. App.1988);

(11) the accused fled the scene, *Chavez v. State*, 769 S.W.2d 284, 288 (Tex.App.— Houston [1st Dist.] 1989, pet. ref'd); and

(12) the accused made furtive gestures, *Guiton*, 742 S.W.2d at 9.

The State need not show a precise set of facts to prove possession. *See Humason v. State*, 728 S.W.2d 363, 366–67 (Tex.Crim. App.1987). A circumstantial case is legally sufficient when some of these factors appear in concert. The Court of Criminal Appeals has held in several cases that one of the factors alone does not support a finding of an affirmative link. *See, e.g., Herndon*, 787 S.W.2d at 409; *Cude v. State*, 716 S.W.2d 46, 47–48 (Tex.Crim.App. 1986); *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim.App. [Panel Op.] 1981).

## DEVELOPMENT OF THE RECORD

Separate defense counsel represented the two defendants. The trial court granted defense counsel's requests to adopt each other's motions and objections.

### 1. The Informant's Hearsay Identification

Appellants did not dispute probable cause for arrest. Defense counsel objected to Officer Budjenska's testimony of the description of the drug dealers provided by his confidential informant. The trial court sustained the hearsay objection, instructed the jury to disregard, and denied counsel's motion for mistrial. The State pursued the line of questioning. The court heard defense counsel's objections outside the presence of the jury. Counsel objected to the State's offer of evidence of an extraneous offense and to the officer's hearsay testimony. The court instructed the prosecutor not to go into evidence of any extraneous offense. The court also sustained the hearsay objection. The prosecutor argued the officer's testimony of what occurred while the officer was waiting for the informant was admissible. Defense counsel objected to that testimony on hearsay and relevancy grounds. The court ruled it would allow the testimony as long as it did not involve the two defendants.

The jury returned to the courtroom. Defense counsel objected to the line of questioning. The court overruled the objection but allowed a running objection to the inquiry.

Once again, the prosecutor sought to elicit the informant's description of the twins. Counsel objected on hearsay grounds. The trial court sustained the objection. Defense counsel requested an instruction to the jury. The trial court instructed the jury not to consider hearsay which the court had disallowed.

The prosecutor then tried to elicit testimony from the officer of the description of the suspects he gave his men. Defense counsel objected to the hearsay. The trial court overruled the objection. Defense

counsel conducted a voir dire examination of the officer to determine the basis of his testimony. The officer conceded the information came solely from his informant. Defense counsel renewed their hearsay objection. The trial court sustained the objection and again instructed the jury to disregard the hearsay. The trial court overruled counsel's motion for mistrial.

The prosecutor argued the State was not offering the informant's description of the twins for the truth of the matter asserted, but only to show what Officer Budjenska told his fellow officers. The trial court reversed itself and allowed the testimony. Defense counsel once more objected, this time on relevancy grounds, and requested a limiting instruction. The trial court overruled the objection. It instructed the jury not to consider the testimony for the truth of the identification of the twins, but only for what the officer said. The officer related the twins' physical descriptions provided by the informant.

Defense counsel again asked for a hearing outside the jury's presence. Counsel moved to require the State to reveal the informant's identity. They argued the informant's testimony was necessary to a fair determination of the issue of guilt-innocence. They also requested an *in camera* hearing.[2] The trial court denied both motions. Defense counsel then objected to the officer's bolstering testimony of the informant's reliability. The trial court overruled the objection. Defense counsel renewed their objection on relevancy grounds. The trial court also overruled that objection.

The jury returned. The officer testified to the informant's reliability. Defense counsel once again objected on hearsay and bolstering grounds. They renewed the objections made outside the jury's presence and requested a running objection to the line of questioning. The trial court overruled the objections and allowed the running objection.

The State then called Officer Claggett. In response to a direct question from the

2. *See* Tex.R.Crim.Evid. 508.

prosecutor, Officer Claggett testified to his knowledge of appellants' connection to Apartment 106. His information came through Officer Budjenska from the informant. This information was that identical twins used the residence as a narcotics trafficking house. Defense counsel objected on hearsay grounds. The trial court overruled the objection.

### 2. The Admission That Appellants Lived in Apartment 106

Both appellants testified at the guilt-innocence phase. On cross-examination, Lonnie denied telling Officer Budjenska he (Lonnie) lived in Apartment 106. His testimony was he told the officer he was visiting in the apartment complex with his stepfather's girlfriend. Johnnie also denied living in Apartment 106. He did not testify about any conversation with Officer Budjenska.

On rebuttal, Officer Budjenska testified that one of the appellants admitted during book-in to staying in Apartment 106. The officer could not state which of the twins made the admission. Johnnie's counsel objected to the testimony as hearsay evidence of a post-arrest interrogation. He argued Johnnie did not testify about a conversation with Officer Budjenska. The trial court overruled the objection. After an extended verbal sparring match with defense counsel on cross-examination, Officer Budjenska admitted that appellants did not make the precise admission he had testified to on direct examination:

Q. Okay. So when you say 106, that was exactly your view of what they were saying. They never said that apartment. They said that complex, if anything, isn't that true?

A. Technically, they never mentioned 106.

Q. Technically, they never mentioned 106?

A. That is true. They didn't say 106.

### 3. The Apartment Manager's Hearsay Evidence

The officers arrested appellants before they talked to the apartment manager:

Q. [DEFENSE COUNSEL] Officer Claggett, the first thing—is it your testimony that the first thing you did when you came out of the van is arrest Johnnie and Lonnie?

A. I wasn't in the van. I was—

Q. I'm sorry. That wasn't meant to be a trick question. Where ever you came from, is that the first thing you did?

A. Yes.

On direct examination in the presence of the jury, Officer Claggett testified the officers handcuffed and "detained" the twins immediately on arriving at the apartment complex. The officers then searched the apartment. When asked by the prosecutor if he contacted any other residents at the apartment complex that night, Officer Claggett replied that after the search he knocked on the manager's door to find out if the suspects lived in Apartment 106. Defense counsel immediately and strenuously objected to the line of questioning on hearsay grounds. The trial court sustained the objection. The prosecutor asked the officer if a lease existed for Apartment 106. Defense counsel again voiced a hearsay objection. The trial court instructed the prosecutor to rephrase the question. The prosecutor then asked if the manager furnished Officer Claggett with a lease for Apartment 106. Once more, defense counsel objected on hearsay grounds. The trial court overruled the objection. Officer Claggett then testified the manager could not provide him with a lease for the apartment.

On re-cross-examination by Johnnie's defense counsel, Officer Claggett testified:

Q. Can you tell me one single item found in 106 that independently connects with these witnesses?

A. No.

Q. Nothing ties 106? There is weapons in there, potential fingerprints, TV, stereo, crack, a table, a couch?

A. I'm not sure about the stereo. Everything else you mentioned was in there.

Q. Whatever was in there, there is no documents or anything else that connects up to these individuals, is there?

A. No, like I said, it was a typical crack house.

Q. What would you have done if there was another set of twins?

[PROSECUTOR]: Judge, I'm going to object to that question as being speculation.

THE COURT: Go ahead and answer.

A. If there would have been another set of twins, I probably still would have had to arrest these two.

Q. What if one twin was sitting next to John—standing next to Johnnie and another identical twin, black male about the right size, maybe, was standing next to Lonnie, which ones would you have arrested?

A. Johnnie and Lonnie.

Q. Why?

A. Because the apartment manager told us they lived there.

[DEFENSE COUNSEL]: Your Honor, I object to that. He was instructed earlier that he was not to go—

THE COURT: I think you solicited the answer.

### 4. Officer Wafer's Expert Testimony

Officer Wafer testified as an expert that the area was a high crime area and that Apartment 106 had characteristics of a "rock house." He explained crack dealers often stand outside the place where they keep their drug inventory:

Q. [PROSECUTOR] Would you please tell the jury the common method or, I guess, marketing techniques used by these people who are selling crack cocaine?

A. As we began to arrest street dealers on the streets, we have educated them what to do and what not to do, not willingly but by—just by the nature of the job of arrests. You don't want to get caught with a lot of rock in your pocket; so, the basic premise is, you either hold one or two rocks or you hold no rocks at all. You have a stash either on the ground or you have it nearby in an apart-

ment. When someone comes up and wants rock, you make a deal with them. You either take their money, walk them into the apartment or walk them into where the stash is. Collect the dope. Give it to them, and let them leave, or they sit in the vehicle. You go back to the stash place. Pick up the rock. Bring it back, and give it to them. You don't want to be caught with rock in your pocket. Police will take it away from you. If you are not holding it, you can't be arrested.

Q. Basing your opinion when you were out there at Apartment 106 that evening, was any of those methods of crack selling being used at that location?

A. It was obvious to me that these individuals knew what they were doing by virtue of the fact they weren't holding the rock. They were close to the apartment. . . .

\*　　\*　　\*　　\*　　\*　　\*

Q. Was it unusual that you found no money at that location?

A. No, I made a conclusion on that also.

Q. What conclusion did you arrive at based on that factor?

A. Normally, when you run crack houses, you find either no money, a lot of money, a little money. In this case it tells you when you find no money that they have just rocked up or been resupplied with rock.

\*　　\*　　\*　　\*　　\*　　\*

Q. Sargeant Wafer, that evening when you were out there at Apartment 106, did you form an opinion as to whether or not the Defendants in this case were in possession of that cocaine that was found in the Apartment 106?

A. Yes.

Q. What opinion was that?

[DEFENSE COUNSEL]: Your Honor, we are going to object to this opinion as to whether these individuals—that is the ultimate issue of fact in this case. This Officer is not qualified to determine whether or not this person, is in fact,

[sic] of possession. That is for the jury to decide.

THE COURT: I'll sustain that. You can ask him what he observed.

[PROSECUTOR]: Your Honor, I believe under Rule 704, he's allowed to state the factual basis of his opinion, and he is allowed to formulate an opinion regarding the possession in this particular case.

THE COURT: All right. Overrule your objection. Go ahead.

A. Yes, I did.

[DEFENSE COUNSEL]: Your Honor, I'm going to object. This—just for the purposes of the record, that this person may be an expert as to drugs, but he's not an expert as to the legal conclusion as to whether someone is in possession or not, which is what he is testifying to. Rule 704 means an expert can testify as to the basis for their opinion. He is not expert on the question of whether these individuals possessed cocaine on January 24th. He's an expert in the drug area but not as to whether these individuals—

THE COURT: I'll overrule your objection.

Q. Did you form an opinion?

A. Yes, I did.

Q. Okay. What was that opinion?

A. That these individuals were standing outside the apartment at this location dealing crack cocaine, and that if a customer came up—obvious they didn't have it on them—they would go in the house and get it.

Q. What was present out there or what did you find that leads you to believe that that was the case in this particular instance?

A. Well, you have got to understand, I have just described all the characteristics that go with a rock house, the people standing outside, which is information that we received. It's obvious that they are not holding the drug on themselves at the time that we arrested them, which is a smart move. And the characteristics that I have described of this particular operation are like a number of operations the way crack houses are run; so, under

those circumstances with people standing outside, and a rock house near, and the weapons and everything that goes along with the rock house, that was the reason I arrived at that conclusion.

### 5. The Cocaine Was in Plain View

Officers Wafer and Claggett found crack cocaine, empty baggies, and weapons in Apartment 106. They found a board which made a barricade at the front door. The officers did not find any cash. The apartment was basically empty. Nothing inside the apartment connected appellants to the apartment. The officers arrested appellants because they were identical twins, dressed alike, and fit the general description given by the confidential informant to Officer Budjenska. When arrested, neither appellant had any drugs, drug paraphernalia, weapons, or keys on his person. Neither appellant had anything on his person which connected him to Apartment 106. The officers arrested appellants almost thirty feet away from the locked door of Apartment 106.

### APPLICATION OF STANDARDS OF REVIEW TO FACTS

#### 1. Appellants Did Not Waive Their Hearsay Objections

Preservation of appellate complaints are governed by the Texas Rules of Appellate Procedure:

(a) **General Rule.** In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make *if the specific grounds were not apparent from the context.* It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

TEX.R.APP.P. 52(a) (emphasis added). The purpose of requiring a timely and specific objection is to ensure that the party informs the trial court of the basis of the objection and gives the court an opportunity to rule on the specific objection as the evidence is introduced. *Sattiewhite v. State*, 786 S.W.2d 271, 283 (Tex.Crim.App. 1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). Appellants repeatedly objected to the officers' hearsay testimony about the informant's identification of the twins, the admission, and the manager's statement. They vigorously contested the admissibility of each hearsay statement. The record amply shows the appellants informed the trial court of their objections. They presented the trial court with numerous opportunities to rule on the admissibility of each piece of evidence. The trial court repeatedly overruled their objections. I would find appellants met the requirements of rule 52(a) and preserved their hearsay objections.

The majority correctly states the rule of curative admissibility: a defendant waives an earlier objection by not objecting to the same evidence each time it arises. A defendant does not waive the harmful effect of improperly-admitted evidence by seeking to meet, destroy, or explain it. *See Maynard v. State*, 685 S.W.2d 60, 66 (Tex.Crim. App.1985). I find no authority for the majority's conclusion that only the defendant can give explanatory testimony. The essence of cross-examination is to undermine direct testimony:

> To require the defendant to sit mute in the face of such harmful evidence to preserve the issue for appellate review is to unfairly hamstring the defendant at trial. Once the evidence is admitted, correctly or incorrectly, the defendant is compelled by the exigencies of trial to mitigate such inherently prejudicial evidence as best as he or she can.

*Maynard*, 685 S.W.2d at 66.

The focus of appellants' cross-examination throughout trial was to develop testimony that only the informant's identification connected appellants to Apartment 106. A defendant who seeks disclosure of an informant's identity must first show the materiality of the informant's testimony. *See Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App.1991). I find no authority for the majority's proposition that appellants waived their hearsay objections by attempting on cross-examination to discredit the officers' testimony and show the materiality of the informant's testimony. In the face of this record, I cannot in good conscience find that appellants waived their hearsay objections. I would reach the merits of the probative value issues.

## 2. The Probative Value of the Informant's Identification

Defense counsel objected to each of the State's efforts to introduce the informant's hearsay identification of the twins. The trial court repeatedly instructed the jury not to consider the evidence for the truth of the informant's assertion that the twins were the persons from whom he made a controlled buy the night before. *See* TEX. R.CRIM.EVID. 105; *Thompson v. State*, 752 S.W.2d 12, 12–14 (Tex.App.—Dallas 1988), *pet. dism'd*, 795 S.W.2d 177 (Tex.Crim.App. 1990). As a consequence of the limiting instruction, the informant's identification of the twins as the persons who sold him drugs the night before is not in evidence. *Bickems v. State*, 708 S.W.2d 541, 544–45 (Tex.App.—Dallas 1986, no pet.). What is not in evidence is irrelevant to a determination of the sufficiency of the evidence. *Chambers*, 711 S.W.2d at 245. The statement has no probative value on the issue of appellants' guilt of the crime with which the State charged them. The record is replete with references from each of State's witnesses, over objection, that the officers arrested Lonnie and Johnnie because they were identical twins, dressed exactly alike except for their sneakers. The State's repeated injection of "twins" into the record transforms evidence of probable cause into evidence of guilt. The jury could not consider the evidence. Neither can we. The majority does not specifically mention the identification in making its sufficiency determination. Yet the uniqueness of the identification means we cannot ignore the effect of the testimony.

### 3. The Probative Value of the Admission and the Manager's Statement

#### a. The Admission

Officer Budjenska first testified one of the twins told him they stayed in Apartment 106. On cross-examination he acknowledged the unidentified twin did not specifically admit to living in Apartment 106. The credibility of any and all witnesses is for the factfinder. *Coe v. State*, 683 S.W.2d 431, 438 (Tex.Crim.App.1984). The jury was free to believe or not believe any portion of Officer Budjenska's testimony. *See Fernandez*, 805 S.W.2d at 456. The majority finds the statement statutorily "not hearsay" as an admission by a party-opponent. *See* Tex.R.Crim.Evid. 801(e)(2)(A). It concludes since the statement is "not hearsay" we must consider it in our sufficiency analysis.[3] It then grafts the "they lived there" statement by one twin onto evidence that the twins lived together to yield an affirmative link of both twins to Apartment 106.

The majority has resurrected what Justice Carver only half-facetiously called the "Dallas Exception" to the hearsay rule peculiar to criminal cases: the mere presence of the accused when a third party asserts a fact outside of court makes the assertion subsequently admissible against the accused. *Jaco v. State*, 646 S.W.2d 278, 281–82 (Tex.App.—Dallas 1983, no pet.). The rules of criminal evidence now prescribe the circumstances in which a third party's statement made in the presence of an accused is admissible. *See* Tex.R.Crim.Evid. 801. One of the most basic principles extant in the law of evidence is the burden is on the tendering party to establish the *prima facie* admissibility of the offered evidence. *Davis v. State*, 645 S.W.2d 288, 291 (Tex.Crim.App.1983). When the State seeks to use hearsay testimony against an accused to identify the accused as the guilty party, the State has the burden to show the testimony falls within an exception or exclusion which authorizes introduction of the testimony. *Moree v. State*, 147 Tex.Crim. 564, 183 S.W.2d 166, 168–69 (1944).

The State did not show which twin made the statement. It did not show against which of the twins the statement is an admission or as to which of the two the statement is hearsay. It did not sustain its burden of showing grounds for admissibility of the statement. The majority's purblind analysis ignores the fact that the statement is hearsay as to the *twin who did not make it*. The twins are not a "single soul dwelling in two bodies."[4] They are separate defendants, separately charged, and separately innocent until proven guilty. In view of the State's failure to show which twin made the statement, I would find it inadmissible hearsay.

As to the majority's waiver argument, defense counsel timely objected to the officer's initial version of the book-in conversation. The court overruled the objection. Appellants then sought to develop testimo-

---

3. The majority relies on the rule that post-arrest questioning which seeks a person's name, address, and telephone number is not an interrogation protected by the Fifth Amendment. *See Massie v. State*, 744 S.W.2d 314, 317 (Tex.App.—Dallas 1988, pet. ref'd). While this is the general rule, "interrogation" also refers to questioning which the officer should know is reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Control of the premises where drugs are found is an incriminating factor in a possession case. Query by the arresting officer about a drug possession suspect's address is reasonably likely to lead to an incriminating response. Officer Budjenska testified on cross-examination that he had testified in dozens of drug cases. He acknowledged he is extremely familiar with the legal requisites of an affirmative link showing. An oral statement by an accused made as a result of a custodial interrogation must meet the requirements of article 38.22 to be admissible. *See* Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979 and Supp.1991). Defense counsel objected to Officer Budjenska's testimony as the result of a post-arrest interrogation as well as on a hearsay ground. However, even if a trial court erroneously admits a statement made during a custodial interrogation, we must consider it in our sufficiency analysis. *Dunn*, 721 S.W.2d at 327. I therefore assume, without conceding, the statement was not the result of a custodial interrogation. My dissent is based on the absence in the record of evidence of which twin made the statement.

4. Aristotle, Diogenes Laertius, book V, section 20.

ny from Officer Budjenska which rebutted, destroyed, or explained the improperly-admitted evidence. *Maynard*, 685 S.W.2d at 65. I would find appellants did not waive the error. I would conclude the statement was inadmissible.

This is not a question of trial error. The question is whether we give probative value to the inadmissible evidence in making our sufficiency analysis. The distinction between trial error and insufficiency of the evidence is significant. Trial error results in a remand for another trial, free of the error. *United States v. Ball*, 163 U.S. 662, 669–70, 16 S.Ct. 1192, 1194–95, 41 L.Ed. 300 (1896). Insufficiency results in an acquittal. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).

I find no authority which requires that we accord probative value to inadmissible hearsay admitted over objection in a sufficiency analysis. Indeed, Justice Marshall expressed the same reservation in his dissent in *Nelson:*

> Where evidence was stricken [by a reviewing court] for reasons having to do with its unreliability, it would seem curious to include it in the sufficiency calculus. Inadmissible hearsay evidence, for example, or evidence deemed defective or nonprobative as a matter of law thus might not be included. By contrast, evidence stricken in compliance with evidentiary rules grounded in other public policies—the policy of encouraging subsequent remedial measures embodied in Federal Rule of Evidence 407, for example, or the policy of deterring unconstitutional searches and seizures embodied in the exclusionary rule—might more justifiably be included in a double jeopardy sufficiency analysis.

*Nelson*, 488 U.S. at 49, 109 S.Ct. at 295 (Marshall, J., dissenting). Justice Marshall's concern harkens back to the rationale behind the old Texas rule denying probative value to all inadmissible hearsay: hearsay is inherently unreliable.

Nor do I read *Chambers* and its progeny as stating anything more than inadmissible hearsay admitted *without objection* may sustain a verdict. *Chambers*, 711 S.W.2d at 247. Rule 802 uses the same limiting language as *Chambers*. TEX.R.CRIM.EVID. 802. To give probative value to inadmissible hearsay admitted over objection renders the use of the words "without objection" in both *Chambers* and in rule 802 a nullity. I would hold, until the Court of Criminal Appeals instructs us otherwise, a portion of the rule stated in *Gardner* retains vitality after rule 802: inadmissible hearsay admitted over objection has no probative value. I would not consider the alleged admission in making our sufficiency analysis.

### b. The Manager's Statement

Similarly, defense counsel properly and timely objected to the prosecutor's attempts to elicit the manager's hearsay testimony directly from Officer Claggett. On cross-examination, in response to an open-ended question from defense counsel, Officer Claggett repeated what the apartment manager told him. An appellant cannot complain of evidence which defense counsel inadvertently elicited on cross-examination. *Ingham v. State*, 679 S.W.2d 503, 507 (Tex. Crim.App.1984). However, the defense counsel in *Ingham* did not object to the evidence once it surfaced. Here, defense counsel immediately objected but was overruled.

Throughout trial, defense counsel had repeatedly objected to hearsay evidence of Officers Claggett and Wafer's conversation with the manager. On direct examination, Officer Claggett had said he talked to the apartment manager *after* the officers arrested the suspects, not before. On cross-examination, defense counsel tried to show what information Officer Claggett relied on *in making the arrests.* Despite the trial court's repeated refusal to allow the testimony on direct, and despite his earlier testimony that he did not speak to the manager until *after* he arrested one of the suspects, Officer Claggett testified he would have arrested Lonnie and Johnnie even in the presence of other twins because the manager told them the twins lived there.

Officer Claggett's testimony was a blatant effort by an experienced witness to provide testimony which the State needed but could not place before the jury. The majority condones and even encourages these tactics by granting probative value to the evidence. I would find that defense counsel did not elicit the testimony and that the trial court erred in overruling defense counsel's hearsay objection. As with the admission testified to by Officer Budjenska, I would not consider the manager's statement in making the sufficiency analysis. *Chambers*, 711 S.W.2d at 247.

### 4. The Probative Value of Officer Wafer's Opinion

Rule 702 provides for expert testimony in criminal trials:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CRIM.EVID. 702. A trial court determines two predicates in deciding whether to admit expert testimony: (1) whether the witness is qualified as an expert, and (2) whether scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. The provisions of rule 702 do not change prior law concerning the trial court's determination of these two predicates. *Powers v. State*, 757 S.W.2d 88, 93 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

Appellants did not contest Officer Wafer's qualifications as an expert on drug crime. They did object to the officer's opinion that the appellants possessed the cocaine revealed by the raid on Apartment 106. An objection that a proffered expert opinion "invades the province of the jury" is no longer a valid objection. TEX.R.CRIM. EVID. 704. However, appellants made the closely-related objection that the issue of appellants' possession of the cocaine was not properly subject to expert opinion.

The police officers testified appellants were standing in the front yard of the apartment complex at the time of their arrest. The officers also testified there was little furniture in Apartment 106. They testified to finding a board at the front door which could be used as a barricade. They found drugs and weapons.

Officer Claggett testified residents who stand around in economically-depressed neighborhoods are often crack dealers. He asserted the presence of a lot of cash, no cash, or some cash indicates a "rock house."

These are facts from which the jury could make a decision. The facts require no sophisticated expertise to interpret. The jury could have concluded from these facts, without any technical assistance, that Apartment 106 was being used by someone as a "rock house." Over objection, however, Officer Wafer gave his opinion that *appellants* were the persons who possessed the cocaine. I would find the trial court should not have permitted the officer to make the legal conclusion that appellants possessed the cocaine in Apartment 106.

The Court of Criminal Appeals' decision in *Gardner* is again dispositive of the issue. Gardner appealed his conviction for possession of a firearm by a felon. One of the elements of the offense was the underlying felony involved an act of violence to person or property. *See* TEX.PENAL CODE ANN. § 46.05 (Vernon 1974). Gardner admitted to a conviction for burglary of a private residence at night. He testified he entered the house through an unlocked door. The owner of the burgled house testified there were no signs of forced entry. In rebuttal, an assistant district attorney testified, without objection, that the facts surrounding the underlying felony burglary involved actual violence to property. *Gardner*, 699 S.W.2d at 833–34. The Court of Criminal Appeals noted that the court of appeals correctly characterized the assistant district attorney's testimony as rank hearsay. *Gardner*, 699 S.W.2d at 834. The Court of Criminal Appeals went on to hold the evidence insufficient to sup-

port Gardner's conviction, *even assuming the unobjected-to inadmissible hearsay possessed probative value.* *Gardner,* 699 S.W.2d at 835. It reasoned whether a felony offense involves violence to person or property was not a proper subject for opinion testimony. It further noted the effect of the opinion testimony was to make burglary a crime of violence per se, which it is not. The Court reasoned:

Since burglary is not a crime of violence per se, the determination of whether a particular burglary is within the scope of Section 46.05, supra, must depend on the facts and circumstances of each case.... Furthermore, the phrase "an act of violence or threatened violence to a person or property" as used in § 46.05, supra, has the meaning that would be ascribed to it by persons of ordinary intelligence.

*Gardner,* 699 S.W.2d at 836 (citations omitted). The Court concluded with its sufficiency analysis:

The relevant inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt and, in the case at bar, we simply do not believe that the opening of an unlocked door or window could be considered by any rational trier of fact to be an act of violence to property. ·

*Gardner,* 699 S.W.2d at 836.

Similarly, standing in the front yard of an apartment complex in which drugs are found is not a crime per se. Only Officer Wafer's "expert" testimony makes appellants' presence in the front yard sinister rather than innocent behavior. The effect of the "expert" testimony is to shift the burden to appellants to prove their presence was innocent. Officer Wafer admitted this guilty-until-proven-innocent mindset on cross-examination:

Q. Are you saying, categorically, that anybody in the area of that apartment's front yard would, as far as you're concerned, be a drug dealer or user?

A. *Until I prove them differently,* yes.

The majority blindly accepts Officer Wafer's opinion that appellants had possession and control of the cocaine because they were some distance from it and did not "hold" it. This presumption is even worse than the officer's characterization of standing in the front yard as guilty conduct. The "evidence" places the onus on appellants to explain their innocent conduct in *not* possessing the cocaine. I cannot agree.

Police officers have to suspect everyone. But their suspicions alone are not evidence of guilt. I would follow *Gardner* and find that connecting appellants with the apartment through comparison of their behavior with a "rock house" operational profile is a legal conclusion. It is not a proper subject for expert opinion testimony. I would find the opinion is not sufficient to link appellants to the cocaine in Apartment 106.

## THE EVIDENCE FAILS TO AFFIRMATIVELY LINK APPELLANTS TO THE COCAINE

### 1. The Evidence Is Not Probative of Guilt

I conclude the State did not introduce *probative* evidence which affirmatively linked appellants to the cocaine. No reasonable inference arose that appellants knew of the cocaine's existence or that they exercised control over the cocaine with intent to deliver. *See Vaughn v. State,* 607 S.W.2d 914, 921 (Tex.Crim.App. [Panel Op.] 1980). The evidence fails to exclude every reasonable hypothesis except appellants knowingly possessed the cocaine with intent to deliver. The proof amounts to only a strong suspicion or mere probability. *See Oaks v. State,* 642 S.W.2d 174, 179 (Tex.Crim.App.1982).

The additional facts required to show appellants' control over the cocaine are completely absent. Even in the cases relied on by the majority, some additional evidence was present which established the accused's control over the contraband. *See Herrera,* 561 S.W.2d at 177; *Turner v. State,* 543 S.W.2d 629, 631 (Tex.Crim.App. 1976); *Estrada v. State,* 643 S.W.2d 753,

756–57 (Tex.App.—San Antonio 1982, no pet.).

### 2. Even If the Evidence Is Probative, It Is Insufficient

Assuming we accord probative value to each of the five pieces of evidence, I would still find the evidence insufficient to support the convictions. The Court of Criminal Appeals has found similar evidence insufficient. In *Cude v. State*, an undercover officer went to Apartment No. 113 in the Twin Mansions Apartments in Beaumont on the pretext of asking for directions. The accused and another person invited the officer into the apartment and sold the officer a controlled substance. The officer then arrested the accused. Several hours later, a search of the apartment made pursuant to a search warrant turned up another kind of controlled substance in the refrigerator in the apartment. The State charged the accused with possession of the second substance, not with sale of the first. The record showed the lease to the apartment was not in the accused's name. The controlled substance was not found on the person of the accused. No clothing or other property indicated appellant lived in the apartment. An employee of the Texas Department of Corrections testified the accused told him he stayed in the apartment. A police officer testified the accused appeared to be in control of the premises at the time of the sale of the first substance. The Court of Criminal Appeals examined the sufficiency of this evidence and concluded:

> The testimony of the police officer is pure speculation and creates no more than a suspicion that appellant could have been in joint or exclusive possession of the premises. There has been no showing of an affirmative link between appellant and the controlled substance.

*Cude*, 716 S.W.2d at 48.

This case is indistinguishable on its facts from *Cude*. Just as in *Cude*, the evidence here consists of: (1) identification of appellants as the sellers in an extraneous drug sale; (2) testimony that appellants stayed in the apartment where the drugs were found; and (3) an officer's opinion testimony that appellants possessed the cocaine. *See also Herndon*, 787 S.W.2d at 408–09; *Flores v. State*, 650 S.W.2d 429, 430 (Tex. Crim.App.1983); *Rhyne*, 620 S.W.2d at 600. Unlike the accused in *Cude*, appellants were outside when the officers raided Apartment 106. The fact renders the majority's "readily accessible" affirmative link even more tenuous in this case than it was in *Cude*.

### 3. Even If the Evidence Is Probative, It Is Inconsistent

The majority bases its analysis on the jury's right to believe or disbelieve any portion of any witness's testimony. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982). The majority interprets this rule to permit the jury to simultaneously believe contradictory evidence. The majority sustains the jury's verdict by pointing to evidence the twins lived in Apartment 106. At the same time it points to evidence the apartment had the characteristics of a "typical crack house," with none of the usual signs of occupancy such as clothing, papers, or personal belongings. A rational jury could believe one or the other, but not both. Double vision is no substitute for rationality.

### CONCLUSION

I am sympathetic to the monumental task which confronts our police officers in containing the drug problem. As critical as the drug problem is in our community, we have not yet reached the point where denunciation by an unidentified out-of-court witness who is not subject to cross-examination takes the place of evidence. My concern does not extend to upholding unsubstantiated hearsay and unsupported speculation as probative evidence of guilt.

The jury should not have considered the hearsay identification of the twins by the informant. No rational jury could have disregarded the identification and still have found the essential elements of the crime beyond a reasonable doubt. *Butler*, 769 S.W.2d at 239. The only elements the State affirmatively linked were the twins.

I would sustain appellants' third point of error. My conclusion is dispositive of the appeal. I do not consider it necessary to discuss appellants' first two points of error. A reversal based on insufficient evidence results in an acquittal. *Windham v. State,* 638 S.W.2d 486, 487 (Tex.Crim.App.1982), *overruled on other grounds, Yalch v. State,* 743 S.W.2d 231, 233 (Tex.Crim.App. 1988). The only verdict the jury could properly have returned is an acquittal. *See Windham,* 638 S.W.2d at 488.

I would reverse the trial court's judgment and render a judgment of acquittal.

ROWE and MALONEY, JJ., join in this dissent.