

# NUMBER 13-10-00619-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

QUIRINO MACHIN SANCHEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

## On appeal from the 430th District Court
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Benavides
## Memorandum Opinion by Chief Justice Valdez

Appellant, Quirino Machin Sanchez, was convicted of possession of marihuana in an amount of more than 2,000 pounds and was sentenced to ten years' confinement. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2010). By one issue, Sanchez contends that the trial court abused its discretion by denying his motion to disclose a confidential informant. We affirm.

## I. BACKGROUND[1]

On August 18, 2009, after receiving information provided by an anonymous tipster, officers with the Texas Department of Public Safety ("DPS") stopped a white eighteen-wheeler for a traffic violation. Sanchez was a passenger in the vehicle. After receiving consent to search from the driver, the officers searched the vehicle and found 2,472 pounds of marihuana. Sanchez was arrested and a grand jury indicted him for possession of marihuana.

Sanchez filed a motion requesting that the trial court order the State to provide the informant's identity and address, claiming that the informant's testimony was "material to the defense on the issues of both guilt [and] innocence." Sanchez then filed a motion pursuant to Texas Rule of Evidence 508 requesting the State to disclose the identity of the anonymous tipster. *See* TEX. R. EVID. 508. Sanchez claimed that the anonymous tipster "ha[d] testimony necessary to a fair determination of one or more material issues in his criminal case." *See id.* R. 508(c)(2). On June 22, 2010, the trial court held a hearing on Sanchez's motion to reveal the identity of the confidential informant. Sanchez presented the testimony of Agent Javier B. Riojas and Agent Joseph A. Lopez in support of his motion.

Agent Riojas, an agent with the DPS, testified that he received "second or third hand" information from another officer that a confidential informant, or a "C.I.," called in a report of suspicious activity. When asked where the call occurred, Agent Riojas stated that he wasn't sure if the call was made to his supervisor, "Rolando's" or "Agent

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

Lopez's" cell phone. Nonetheless, Agent Riojas, Lieutenant Rolando Villarreal, and Agent Lopez were all present when the call came in and the caller was placed on speakerphone, so that all present heard the conversation. On cross-examination by the State, Agent Riojas clarified that the call he heard was not from the C.I. but was from an agent from the federal government.

Agent Riojas testified that, according to the federal agent, the informant provided a description with the license plate number of a vehicle involved in suspicious activity. The C.I. also provided information that the vehicle had been at a warehouse in Edinburg, Texas; however, according to Agent Riojas, the C.I. did not provide a physical address for the warehouse. According to Agent Riojas, the C.I. reported that "there was some kind of loading going on" and that the C.I. observed "what appeared to be a loading of mari[h]uana"; however, the C.I was unable to see whether the doors of the vehicle were removed because it was backed up into the warehouse. The C.I. stated that he had seen two men at the warehouse and that these men were the occupants of the vehicle. According to Agent Riojas, the C.I. "conducted one or two drive[-]bys and saw the truck at this suspicious location, with the doors closed . . . and gave a pretty, detailed description of the truck." Agent Riojas elaborated that the C.I. was traveling on a public roadway "and was able to see observations taking place at this warehouse." The C.I. did not provide a description of either individual he allegedly saw. Agent Riojas stated, "It was basically—the easiest thing to describe would have been the big truck— the eighteen-wheeler—and that's what [the C.I.] did."

Agent Riojas testified that the purpose of speaking to a C.I. "is, basically, just gathering basic information for us to go in and start to corroborate, and gain our own

3

information." On cross-examination, Agent Riojas stated that the information was used to establish surveillance of the vehicle and to begin an investigation. When asked, "Was there any material fact on guilt or innocence provided by this tip that would be relevant to this trial," Agent Riojas replied, "No, sir."

On re-direct examination, Sanchez's counsel asked, "Sir? Is it material who loaded the drugs into the tractor trailer? Is that material or not?" Agent Riojas responded, "No." Agent Riojas then explained that he "never said that [the C.I.] was there [at the warehouse] whenever any mari[h]uana was being loaded." Agent Riojas agreed that it was an important part of his investigation to determine the identity of the men loading the marihuana; however, the officers "were never able" to make that determination based on the C.I.'s information. Instead, once the officers "found out [about the C.I.'s information], a traffic stop was conducted . . . ." Agent Riojas stated that he was not claiming that Sanchez was one of the men loading the marihuana onto the vehicle and that "from the information that [the C.I.] gave [him], there is probably no way that [the C.I.] would be able to identify that either. Because . . . he was driving by on a public road." Agent Riojas agreed that it was "possible" that the C.I. could identify the men he saw at the warehouse that day. On re-cross examination, Agent Riojas stated that the C.I. had only witnessed suspicious activity and that, based on the information he received, the C.I. could not identify the two individuals the C.I. saw that day.

Lopez, an agent with the Border Patrol, testified that he heard a telephone call at the DPS office made by an "FBI agent." Agent Lopez clarified that the phone call was not from the C.I. but was from an FBI agent and that neither he, nor Agent Riojas nor

Lieutenant Villarreal spoke with the C.I. The information was "second-hand." Agent Lopez stated, "Basically, the information was relayed to the lieutenant. We had him, basically, on speaker phone and it was [a] description, and possible location of the vehicle." The information also included the vehicle's license plate number and that it was located at the vicinity of a Super 8 motel. Agent Lopez testified that he did not receive any information regarding the loading or unloading of drugs at a warehouse.

Sanchez's counsel argued that it was unknown whether the C.I. could identify the men he saw at the warehouse and that Sanchez may not have been the man loading the drugs onto the vehicle. He also argued that the agents failed to ask the C.I. whether he could identify the men he saw that day. The trial court stated:

> But [the C.I.] couldn't identify the defendants. There is no evidence that I have that the C.I. could identify the defendants, that [the C.I.] knew that there was mari[h]uana. There is just suspicions that [the C.I.] reported to law enforcement, that [the agents] followed up and corroborated.
>
> . . . .
>
> I don't have a record that says that you [Sanchez] met your burden to show me—what you need to show me—for me to disclose.
>
> . . . .
>
> They couldn't even identify this defendant. Had they received information that it was this individual, and it fit his description and all that. The only thing they could do [defense counsel], from the testimony that I have before me, is that there was a description of the vehicle, an eighteen wheeler, plates, and license plates from Florida and that it was close to a Motel [8]. And that was it.
>
> . . . .
>
> Right now the information that I have—the information that the informant provided has nothing—no testimony that was necessary to the fair determination of the issue of guilt of this defendant. He couldn't identify him. He didn't know him from Adam.

5

. . . .

If the rule was the way you say, then I would have to order the government to disclose the informant in every, single case. And, obviously, they'd have to dismiss the case because they don't want somebody to go blow them away, and kill them before they testify. That's the reason for these rules. . . .

You have to make a specific showing. You have to show all of these different things, and that's the only way I can order them disclosed, and I don't think that you have met your burden.

The trial court then asked the State to determine whether the identity of the C.I. was known. The trial court stated, "Find out. I will—the Court is ready to make a decision. I'm going to overrule your motion to disclose the informant at this time. I'm going to grant you [Sanchez] the right—I'm going to have the State inquire whether they have the name of that informant, and I'll conduct an in camera inspection of the affidavit, or the information, or—you know—make a record of it, if there is such a person, so we can have the identity."[2]

## II. DISCUSSION

We review a trial court's denial of a motion to disclose a confidential informant under an abuse of discretion standard. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980). Under this standard, we affirm the judgment unless the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We may not substitute our judgment for that of the trial court; rather, we must decide whether the trial court's decision was arbitrary or unreasonable. *Id.* We must

---

[2] Neither side addresses whether the State provided the trial court with the identity of the C.I. However, in his brief, Sanchez argues that the trial court committed reversible error by not conducting an in camera hearing.

consider all the circumstances of the case to determine whether the trial court abused its discretion by not requiring the State to disclose the informant's identity. *Portillo v. State*, 117 S.W.3d 924, 928 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The State has the "privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in a criminal investigation." TEX. R. EVID. 508(a). While the State has a privilege to refuse to disclose the identity of a confidential informer, *id.*, a court may order the State to disclose the identity of an informer if it appears that the "informer may be able to give testimony necessary to a fair determination . . . on guilt or innocence." *Id.* R. 508(c)(2); *Bodin v. State*, 807 S.W.2d 313, 317–18 (Tex. Crim. App. 1991). A defendant bears the threshold burden of demonstrating that the informant's identity must be disclosed. *Bodin*, 807 S.W.2d at 318 (citing *Rugendorf v. United States*, 376 U.S. 528, 534–35 (1964)). "The informer's potential testimony must significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient." *Id.* The defendant is required to make a plausible showing of how the informer's information may be important. *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982)).

When information from an informant is used only to establish probable cause for a search warrant and the informant was not a participant in the offense or present when the search warrant was executed, the identity need not be disclosed because the informant's testimony is not essential to a fair determination of guilt; rather, it is only relevant to a determination of probable cause. *Washington v. State*, 902 S.W.2d 649, 657 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd).

Here, the evidence showed that the informant's tip was used only to "establish surveillance of the vehicle and for starting an investigation" of the possible possession of narcotics. *See id.* Therefore, the informer's testimony was relevant only for a determination of why the agents began their investigation of the vehicle. Moreover, no evidence was presented that the informant was a participant in the charged offense or present when the agents conducted the search of the vehicle. *See id.*

Sanchez argues that the informant may have been able to provide evidence of his innocence, but the agents failed to make such an inquiry. Mere conjecture and speculation about what questions the agents failed to ask the informant and what his answers may have been is not a basis for the trial court to order disclosure of an informant. *See Bodin*, 807 S.W.2d at 318. Furthermore, no evidence was presented that the informant knew the identities of the men who were allegedly loading the eighteen-wheeler with marihuana. In fact, the agents testified that the informant could not identify those men. The evidence provided shows that the informant's information in this case was not used to establish Sanchez's identity or to establish that he possessed the marihuana.

Sanchez has therefore failed to show that the informant's testimony was necessary to a fair determination of guilt or innocence. *See Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (finding that when the informant's information was used only to establish probable cause for a search warrant and he neither participated in the offense nor was present when the search warrant was executed, the informant's identity need not be disclosed because his testimony was not essential to a fair determination of guilt); *Long v. State*, 137 S.W.3d 726, 733 (Tex.

8

App.—Waco 2004, pet. ref'd) (explaining that because the C.I. merely provided information leading to probable cause, the trial court did not abuse its discretion by not revealing the C.I.'s identity); *Washington*, 902 S.W.2d at 657; *Edwards v. State*, 813 S.W.2d 572, 580 (Tex. App.—Dallas 1991, pet ref'd) (providing that the informant's testimony was neither relevant nor helpful because he was not present at the time of the execution of the search warrant or at the arrest, and he did not participate in the charged offenses); *see also Richie v. State*, No. 13-08-084-CR, 2010 Tex. App. LEXIS 1772, at **6–8 (Tex. App.—Corpus Christi Mar. 11, 2010, no pet.) (mem. op., not designated for publication) (concluding that the trial court did not abuse its discretion by not disclosing informant's identity because the evidence established that the informant did not participate in the charged offense, was not present when the appellant was arrested, and only provided information relevant to the issue of probable cause). Because Sanchez did not make a plausible showing of how the informant's testimony may have been relevant to his guilt or innocence, we conclude that the trial court did not abuse its discretion by denying Sanchez's motion to disclose the informant's identity or by declining to conduct an in camera inspection. *See Bodin*, 807 S.W.2d at 318; *Washington,* 902 S.W.2d at 656 (providing that the trial court shall give a public entity an opportunity to show in camera facts only "[i]f it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence"). We overrule Sanchez's sole issue.

### III.     CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
22nd day of November, 2011.